# Illinois Official Reports

## Appellate Court

---

### *Tummelson v. White*, 2015 IL App (4th) 150151

---

| | |
|---|---|
| Appellate Court Caption | ANTHONY P. TUMMELSON, Plaintiff-Appellee, v. ELIZABETH ANN WHITE, n/k/a ELIZABETH ANN BEAUREGARD, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-15-0151 |
| Filed | December 30, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 10-CH-368; the Hon. Michael Q. Jones, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | David R. Moore (argued), of Prillaman & Moore, Ltd., of Urbana, for appellant.<br><br>Michael J. Tague (argued), of Flynn, Palmer, Tague, Lyke & Jacobson, of Champaign, for appellee. |
| Panel | JUSTICE APPLETON delivered the judgment of the court, with opinion.<br>Justices Harris and Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1 Plaintiff, Anthony P. Tummelson, and defendant, Elizabeth Ann Beauregard, lived together, unmarried, for years. Plaintiff claims that defendant has been unjustly enriched by funds he contributed to the purchase of a house titled solely in her name and which he cohabited until she made him move out. The trial court agreed with plaintiff and imposed a constructive trust on $17,015.71 of the equity in the house, with him as the beneficiary. Defendant appeals.

¶ 2 We hold the trial court was within its discretion to impose a constructive trust to the extent of $7,000, the amount of the down payment plaintiff's parents made on the house, presumably as a gift to him. But a trust in any greater amount was an abuse of discretion, considering that the mortgage payments were made out of a joint account and that any amounts plaintiff had deposited into that account were gifts from him to defendant. Therefore, we affirm the trial court's judgment in part and reverse it in part.

## I. BACKGROUND

¶ 4 Plaintiff, 46 years old, was a restaurant manager, and defendant, 57 years old, worked for a doctor and, later, for a hospital. They both had a few years of college education and were in sound health. Plaintiff testified he had diabetes but that his health was fine.

¶ 5 Sometime in the 1990s, the parties began living together in Philo, Illinois. Initially, they lived in a house on Harrison Street, which defendant rented from her aunt. Plaintiff's attorney asked plaintiff:

"Q. And did you have an arrangement relative to finances during that period?

A. Yeah. Everything went in the kitty. I mean my money was her money and vice-versa. I mean we paid the bills.

Q. Okay. You had a joint account?

A. Absolutely.

Q. And your paycheck went into that account?

A. Absolutely.

Q. As did hers?

A. Absolutely, sure."

¶ 6 In approximately 1999, defendant bought a house on East Jefferson Street, making a down payment of $6,500, which she had obtained from her parents. The parties moved out of the rental house and into the house on East Jefferson Street. During the five or six years they lived on East Jefferson Street, the mortgage payments were made out of the joint account.

¶ 7 Plaintiff testified that, throughout their entire relationship, the parties' earnings went into the joint account, out of which they paid the household bills and the mortgages. According to defendant's testimony, she and plaintiff "never had a deal or discussed how much relative money [she] would be putting into the account." They "never had a particular conversation on [she] was going to do this much, he was going to do that much." Nor did they ever discuss how much plaintiff should contribute toward the purchase of any house. And in his own testimony, plaintiff did not contradict defendant in that respect.

¶ 8 Apparently without any importuning on defendant's part and without any consideration of who should pay what, bills indiscriminately were paid out the joint account, including the house payments. Naturally, these house payments out of the joint account built up equity. But defendant was always the sole titleholder of record. Plaintiff's attorney asked plaintiff:

"Q. Okay. And the–but [the East Jefferson house] was titled in the Defendant's name?

A. Correct.

Q. Why was that?

A. You know, I'm really not sure. I know her credit was a little better at the time. I think that was always–I was unselfish; I was trying to get her credit better than mine and always worried about her. You know, that was my objective."

¶ 9 In 2006, defendant sold the house on East Jefferson Street, and using the equity from the sale, $19,838.62, supplemented by a loan of $155,000, she had a new house built at 502 Cleveland Street. There were two mortgages on the Cleveland Street property: the first mortgage was in favor of Option One, and the second mortgage was in favor of the builder, C&C Properties, L.L.C. (C&C). Even though the house on Cleveland Street was titled solely in defendant's name, plaintiff was a guarantor on the second mortgage, the one in favor of C&C. In addition, he made a down payment to C&C in the amount of $7,000–or, more precisely, his parents did so in his behalf, by issuing a cashier's check to C&C. Defendant testified she thereafter made 17 monthly payments of $391.11 on the second mortgage. Then, in July 2007, she refinanced the Cleveland Street house and, out of the refinancing proceeds, paid C&C in full.

¶ 10 According to defendant's testimony, the Cleveland Street house was now underwater, figuratively speaking. The house was worth $160,000 to $165,000, but the pay off on the mortgage (that is, what she currently owed) was $189,884. She had moved out of the house and was renting it out.

¶ 11 After hearing this evidence, the trial court entered a judgment in plaintiff's favor on count I of his complaint, the count seeking the establishment of a constructive trust. (The remaining count of the complaint, count II, was entitled "Separate Cause of Action in Law–Loan" and was alternative to count I.) In the court's opinion, a fiduciary relationship between the parties warranted the imposition of a constructive trust. The court reasoned as follows:

"I then need to assess whether the nature of this relationship gives rise to inference of a fiduciary relationship, and there the lynchpin of all fiduciary relationships I think is the notion of some dominance by one party over the other. If I accept, for instance, the threshold decision that things would be in her name was made because, (1), his credit wasn't good, I haven't heard any evidence to [contradict] that, and (b), that whether it was nobility or some other personal desire to do good by her, I obviously accept the facts which are–the fact that is undisputed that things were always titled in her. Then this supports a fiduciary relationship between the two. [Plaintiff], who was kicking in money at least during some periods of time on a regular basis, must have relied on her continuing acceptance of the nature of their relationship."

¶ 12 Finding defendant to be the dominant party and plaintiff to be the subservient party in a fiduciary relationship, the trial court ruled that defendant held $17,015.71 of the equity in 502 Cleveland Street, Philo, Illinois, as a constructive trustee and that plaintiff was the beneficiary.

This $17,015.71 consisted of three items: (1) $6,691.31, representing half the equity realized on the sale of the house on East Jefferson Street, less the down payment of $6,500 defendant had made on that house; (2) $3,324.40, representing half the pay down of the second mortgage on the Cleveland Street house ($391.11 times 17 months divided by 2); and (3) the down payment of $7,000 that plaintiff's parents had made on the Cleveland Street house.

¶ 13   This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15                    A. Defendant's Motion to Supplement the Record

¶ 16   On June 8, 2015, defendant filed a motion to supplement the record on appeal with defendant's exhibit Nos. 1 to 18, which the trial court had admitted, on her motion, in the trial. See Ill. S. Ct. R. 329 (eff. Jan. 1, 2006). Because plaintiff has not responded, we infer he has no objection to defendant's motion. See Ill. S. Ct. R. 361(b)(2) (eff. Jan. 1, 2015). Therefore, we grant defendant's motion to supplement the record on appeal with defendant's exhibit Nos. 1 to 18.

¶ 17                    B. The Question of a Fiduciary Relationship

¶ 18   As we said, the trial court ruled that defendant held $17,015.71 of the equity in 502 Cleveland Street as a constructive trustee and that plaintiff was the beneficiary. See *People ex rel. Hartigan v. Candy Club*, 149 Ill. App. 3d 498, 502 (1986) ("Two essential elements of a constructive trust action are the existence of identifiable property to serve as the *res* upon which a trust can be imposed and possession of that *res* or its product by the person who is to be charged as the constructive trustee."). The court imposed this constructive trust because it found that when plaintiff made $17,015.71 in contributions to real estate titled solely in defendant's name, there was a "fiduciary relationship between the two."

¶ 19   The supreme court has said: "Constructive trusts are divided into two general classes: one in which actual fraud is considered as equitable grounds for raising the trust, and the other, where there exists a fiduciary relationship and subsequent abuse of such relationship." (Internal quotation marks omitted.) *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 114 Ill. 2d 278, 293 (1986). Therefore, strictly speaking, the existence of a fiduciary relationship between plaintiff and defendant would not justify the imposition of a constructive trust; defendant also would have had to abuse the fiduciary relationship. See *id.*; *Jones v. Washington*, 412 Ill. 436, 441 (1952). The argument, apparently, is that defendant abused her fiduciary relationship with plaintiff by demanding that he leave her house while she retained the financial contributions he had made toward that house. A fiduciary may not profit at the expense of the party dominated. See *Jones*, 412 Ill. at 441; *In re Estate of Miller*, 334 Ill. App. 3d 692, 698 (2002).

¶ 20   Obviously, defendant could not have abused a fiduciary relationship with plaintiff unless she actually was in a fiduciary relationship with him. What is a fiduciary relationship? There are two kinds: (1) a fiduciary relationship as a matter of law and (2) a fiduciary relationship as a matter of fact. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 592 (2011). An agent and a principal are in a fiduciary relationship as a matter of law. *Id.* The record appears to contain no evidence that defendant ever agreed to be plaintiff's agent.

¶ 21    That leaves a fiduciary relationship as a matter of fact. Such a fiduciary relationship exists if "one party reposes special trust and confidence in another[,] who accepts that trust and confidence and thereby gains superiority and influence over the subservient party." (Internal quotation marks omitted.) *Id.* at 585. Arguably, plaintiff trusted defendant in the sense that when he contributed his own money toward the houses, which were titled solely in her name, he trusted she would continue letting him reside with her in these houses so that he, too, would benefit from his contributions.

¶ 22    But trust and confidence are not enough to create a fiduciary relationship; *superiority and influence* must *result* from the trust and confidence. "A fiduciary relationship has been held to exist in every case where, in fact, trust and confidence are reposed by one person in another who, as a result thereof, gains influence and superiority over the other." *Jones*, 412 Ill. at 440; see also *In re Estate of Stahling*, 2013 IL App (4th) 120271, ¶ 18; *Khan*, 408 Ill. App. 3d at 585. "[S]ignificant dominance and superiority [are] necessary to establish a fiduciary relationship." (Internal quotation marks omitted.) *Fichtel v. Board of Directors of the River Shore of Naperville Condominium Ass'n*, 389 Ill. App. 3d 951, 963 (2009). "Dominance," in this context, means "the ability to exercise undue influence." (Internal quotation marks omitted.) *Beach v. Wilton*, 244 Ill. 413, 423 (1910).

¶ 23    The argument might be made that defendant had power over plaintiff in that, as the titleholder of 502 Cleveland Street, she could tell him to leave and, legally, he would have to comply. But dominance in that narrow sense is merely the dominance that a licenser typically has over a licensee; it is not "the ability to exercise undue influence." (Internal quotation marks omitted.) *Id.* Neither party testified that defendant ever requested plaintiff to contribute toward the purchases of the houses or that she ever told him what to do with his money, let alone that she strongly influenced him from a position of superiority. See *Fichtel*, 389 Ill. App. 3d at 963. As far as we can see from the record, defendant never influenced plaintiff to do anything other than, ultimately, to move out. We conclude, therefore, that the trial court made a finding that was against the manifest weight of the evidence when it found that the parties were in a fiduciary relationship. See *Southwest Bank of St. Louis v. Poulokefalos*, 401 Ill. App. 3d 884, 890 (2010).

¶ 24            C. A Better, Alternative Reason to Affirm the Judgment in Part

¶ 25    On appeal, all defendant does is argue she owed plaintiff no fiduciary duty and that she is innocent of any wrongdoing, and all plaintiff does is argue there was a fiduciary relationship. The parties take a rather blinkered view of this case, considering that (1) neither a fiduciary relationship nor wrongdoing is absolutely essential to the imposition of a constructive trust and (2) we may affirm a judgment for any reason the record supports, regardless of the trial court's rationale.

¶ 26    Ultimately, we review the trial court's judgment, not its rationale. *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865, ¶ 30. We may affirm the judgment on any ground appearing in the record, regardless of whether the trial court's findings and reasons are correct. *Barack Ferrazzano Kirschbaum Perlman & Nagelberg v. Loffredi*, 342 Ill. App. 3d 453, 461 (2003). Although the trial court was mistaken about a fiduciary relationship, that does not necessarily mean the court was mistaken about the need for a constructive trust.

¶ 27    A constructive trust is a remedy for unjust enrichment. *Kurtz v. Solomon*, 275 Ill. App. 3d 643, 651 (1995). Usually, unjust enrichment results from wrongdoing, such as actual fraud or

the breach of a fiduciary duty (*Charles Hester Enterprises*, 114 Ill. 2d at 293), but it is possible to be unjustly enriched without having done anything wrong (*Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 299 (2000)). For instance, a person, innocent of any wrongdoing, could be unjustly enriched if a benefit were conferred on that person by mistake. *Id.*; 66 Am. Jur. 2d *Restitution and Implied Contracts* § 19, at 616 (2001). A constructive trust rectifies unjust enrichment, not just wrongdoing. "When a person has obtained money to which he is not entitled, under such circumstances that in equity and good conscience he ought not retain it, a constructive trust can be imposed to avoid unjust enrichment." *Smithberg*, 192 Ill. 2d at 299.

¶ 28 Unjust enrichment can occur when unmarried cohabitants decide to stop living together and the one who has sole title to the residence continues to benefit, quite innocently, from investments the other has made in the residence. The American Law Institute says:

"(1) If two persons have formerly lived together in a relationship resembling marriage, and if one of them owns a specific asset to which the other has made substantial, uncompensated contributions in the form of property or services, the person making such contributions has a claim in restitution against the owner as necessary to prevent unjust enrichment upon the dissolution of the relationship.

(2) The rule of subsection (1) may be displaced, modified, or supplemented by local domestic relations law." Restatement (Third) of Restitution and Unjust Enrichment § 28 (2011).

See also *Blumenthal v. Brewer*, 2014 IL App (1st) 132250, ¶ 36 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 28 (2011)).

¶ 29 Before applying section 28 to this case, however, we should ask two questions. First, considering that the mortgage payments were made out of a joint bank account, were these payments "contributions" by plaintiff? Restatement (Third) of Restitution and Unjust Enrichment § 28(1) (2011). Second, would the imposition of a constructive trust conflict with *Hewitt v. Hewitt*, 77 Ill. 2d 49 (1979), by reviving the concept of the common-law marriage? Let us consider each of those questions in turn.

¶ 30                 1. *Mortgage Payments Made Out of a Joint Bank Account*

¶ 31 Remember that the *res* of the constructive trust, the $17,015.71 of equity in the Cleveland Street house, consisted of three items: (1) $6,691.31, representing half the equity realized on the sale of the house on East Jefferson Street, less the down payment of $6,500 defendant had made on that house; (2) $3,324.40, representing half the pay down of the second mortgage on the Cleveland Street house ($391.11 times 17 months divided by 2); and (3) the down payment of $7,000 that plaintiff's parents had made on the Cleveland Street house.

¶ 32 Items (1) and (2) were mortgage payments. It is undisputed that all the mortgage payments were made out of a joint account at Philo Exchange Bank, an account in the names of both parties. When a joint tenant of a bank account deposits funds into the account, the presumption is that he or she does so with the intent to make a gift of those funds to the other joint tenant. *Rasmussen v. LaMagdelaine*, 208 Ill. App. 3d 95, 103 (1991). Before plaintiff deposited any funds into the joint account, he must have known how joint accounts worked. He must have known that defendant, if she wished, could have emptied the account of every last penny by buying a new wardrobe for herself or by treating herself to a vacation—or by making mortgage

payments on property deeded solely in her name. That was what it meant to have two names on an account. The moment plaintiff deposited funds into the joint account, those funds lost their character as his money and became, presumably, an *inter vivos* gift from himself to defendant. See *Frey v. Wubbena*, 26 Ill. 2d 62, 72 (1962); *Rasmussen*, 208 Ill. App. 3d at 103. In his testimony, plaintiff could not have put it better when he said: "[M]y money was her money and vice-versa."

¶ 33 This presumption of a gift can be rebutted only by clear and convincing evidence that the joint account actually was a convenience account (see *Vitacco v. Eckberg*, 271 Ill. App. 3d 408, 412 (1995); *In re Estate of Dzialowy*, 53 Ill. App. 3d 585, 590 (1977)), *i.e.*, "an account that [was] nominally a joint account, but [was] intended to allow the nominal joint tenant to make transactions only as specified by, and on behalf of, the account's creator" (*In re Estate of Shea*, 364 Ill. App. 3d 963, 969 (2006)). The record appears to contain no evidence that the joint account was a convenience account.

¶ 34 It follows that the trial court abused its discretion by imposing a constructive trust in the amounts of items (1) and (2). See *National Union Fire Insurance Co. of Pittsburgh v. DiMucci*, 2015 IL App (1st) 122725, ¶ 78; *Lewsader v. Wal-Mart Stores, Inc.*, 296 Ill. App. 3d 169, 175 (1998). The reason, expressed in slightly different words, is this. Suppose that plaintiff gave defendant a cash gift, to spend as she liked, and that she thereafter used the cash to make a mortgage payment on real estate she owned solely in her name. In that circumstance, it would make no sense to say that plaintiff had made a "contribution[ ]" to defendant's real estate; rather, he gave her money as a gift. Restatement (Third) of Restitution and Unjust Enrichment § 28(1) (2011). As far as the law is concerned, making a deposit into a joint account (which is not a convenience account) is the same as handing the money to the other joint tenant as a gift. *Frey*, 26 Ill. 2d at 72; *Rasmussen*, 208 Ill. App. 3d at 103. Items (1) and (2) came out of a joint account. Thus, they were not "contributions" by plaintiff. Restatement (Third) of Restitution and Unjust Enrichment § 28(1) (2011). Instead, the mortgage payments were made out of gifts he previously made to defendant by depositing funds into the joint account.

¶ 35 ## 2. *Whether a Constructive Trust*
### *in the Amount of Item (3)*
### *Would Violate Hewitt*

¶ 36 Plaintiff testified that plaintiff's exhibit No. 1 was the down payment of $7,000 to C&C and that the remitters were his parents, Philip and Virginia Tummelson: the check was drawn on their account. Plaintiff's exhibit No. 1 is in the record. It is a photocopy of a cashier's check, but the typewriting on the check is so faint as to be illegible. We infer that this cashier's check was made payable to C&C, since there would have been no apparent reason why the Tummelsons would have issued a cashier's check to their son.

¶ 37 Plaintiff never testified that his parents expected him to pay them back. How, then, was this payment of $7,000 a payment by *him*, entitling him to a constructive trust in that amount? It is true that a transfer of property from a parent to a child is presumed to be a gift (*In re Marriage of Lonvick*, 2013 IL App (2d) 120865, ¶ 49), but the parents in this case transferred the property (the $7,000) directly to C&C, not to their son. Is there still a presumption of a gift in such circumstances? We conclude there is. There effectively would be no difference between directly giving plaintiff the $7,000 and paying his creditor $7,000. Consequently, we will

regard the down payment of $7,000 as a contribution by plaintiff to an asset owned solely by defendant. See Restatement (Third) of Restitution and Unjust Enrichment § 28(1) (2011).

¶ 38    By seeking a constructive trust in the amount of this down payment, plaintiff makes a claim significantly different from the claim the plaintiff made in *Hewitt*. In that case, the plaintiff sought " 'an equal share of the profits and properties accumulated by the parties' " during the 15-year period when they lived together "in an unmarried, family-like relationship." *Hewitt*, 77 Ill. 2d at 52. The supreme court rejected the plaintiff's claim, regarding it as an attempt to reinstate common-law marriage. *Id.* The supreme court also was concerned that "sexual activity" might have served as part of the consideration for one-half of the defendant's property. *Id.* at 60. It does not appear that the record in *Hewitt* contained any proof of that, but the supreme court thought it would be "naïve[ ]" to suppose that sex was not part of the consideration. *Id.*

¶ 39    In the present case, by contrast, plaintiff does not seek one-half of defendant's property. Nor does he seek compensation for any "services." Rather, he seeks a constructive trust in the amount of a specific sum he contributed toward the purchase of the Cleveland Street house—a house which, despite his contribution, he no longer is allowed to cohabit. See Restatement (Third) of Restitution and Unjust Enrichment § 28 (2011). He is not trying to revive common-law marriage. He just wants his down payment back when the house is sold. Insomuch as the trial court imposed a constructive trust in the amount of the down payment of $7,000, we find no abuse of discretion. See *National Union*, 2015 IL App (1st) 122725, ¶ 78; *Lewsader*, 296 Ill. App. 3d at 175.

¶ 40    We realize that some objections could be made to this constructive trust. Is there even an identifiable *res* of which defendant could take possession as a trustee, considering that, according to her uncontradicted testimony, the house is underwater? See *Candy Club*, 149 Ill. App. 3d at 502. If, when the house was sold, the equity turned out to be no more than $7,000, would it be fair if the full amount went to plaintiff and nothing went to defendant? We do not reach these questions because the parties do not raise them in their briefs. We do not mean to imply any criticism; maybe the parties have their reasons for not raising these questions. We just did not want to seem oblivious to the potential problems.

¶ 41                                    III. CONCLUSION
¶ 42    For the reasons stated, we affirm the trial court's judgment in part and reverse it in part. We affirm the constructive trust to the extent of $7,000. Otherwise, we reverse the judgment.

¶ 43    Affirmed in part and reversed in part.