NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200099-U

NOS. 4-20-0099, 4-20-0144 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 29, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF JACQUELINE SHAFER, | ) | Appeal from |
| Petitioner-Appellant, | ) | Circuit Court of |
| and | ) | Sangamon County |
| DUSTIN P. SHAFER, | ) | No. 18D16 |
| Respondent-Appellee. | ) | |
| | ) | Honorable |
| | ) | Matthew Maurer, |
| | ) | Judge Presiding. |

_____

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding the trial court did not err by
(1) determining the parties' interest in their house was marital property and
(2) ordering the sale of the house where the title holder was not joined as a party.
The appellate court declined to address the contempt order where the trial court
failed to impose a sanction.

¶ 2    In January 2018, petitioner, Jacqueline Shafer, filed a petition for dissolution of
her marriage to respondent, Dustin P. Shafer. Following the close of trial, the trial court
determined a residence located at 2111 Barberry Drive, Springfield, Illinois, was a marital asset
and directed the parties to sell the home. Subsequently, the court held petitioner in contempt for
failing to cooperate in the sale of the home.

¶ 3    Petitioner appeals, arguing the trial court (1) lacked subject matter jurisdiction
over the residence because neither party possessed an ownership interest in the property,
(2) erred by ordering the parties to sell the property where the titled owner of the residence was a

necessary and indispensable party and was not made party to the proceeding, and (3) abused its discretion in holding petitioner in contempt. For the following reasons, we affirm but dismiss as to the contempt order.

¶ 4                                    I. BACKGROUND

¶ 5          In January 2018, petitioner filed a petition for dissolution of her marriage to respondent. The record shows the parties married in October 2001 and had eight children. We summarize only the evidence adduced at trial relevant to this appeal.

¶ 6          In 2006, the parties wanted to buy a home, but their financial circumstances prevented them from doing so. Petitioner's mother, Diane Schuerman, testified the residence on Barberry Drive in Springfield had a mortgage in her name. According to Schuerman, the parties asked her to take out a mortgage because they had insufficient credit to qualify for a mortgage in their own names. Respondent testified the parties made the down payment on the Barberry property. Schuerman testified the arrangement was intended to be temporary and the parties were to make all the payments, including the real estate taxes.

¶ 7          In March 2018, Schuerman discovered no mortgage payments had been made since November 2017 when the parties formally separated. When she discovered the default, Schuerman brought the mortgage current. Schuerman testified there was a verbal contract with the parties regarding the Barberry property. However, Schuerman testified there was no written agreement with the parties about payments or how they would acquire any interest in the home. Schuerman testified the mortgage and "all the paperwork" was in her name. Under her agreement with the parties, Schuerman considered the Barberry property to be the parties' house. According to Schuerman, the parties could decide to sell the house when they wanted, but Schuerman "would not be liable for any money involving the house whether it was closing costs

or anything else." Schuerman agreed she had listed the Barberry house for sale in 2013 at the parties' request.

¶ 8        Schuerman identified group text messages between her and the parties from November 2017. In one message, Schuerman asked the parties to have the house placed in their names. Throughout the text message exchange, Schuerman acknowledged the Barberry property was the parties' house. Schuerman testified she never received the 1099 interest statement for the mortgage for 2017 and did not deduct the mortgage interest on her 2017 income tax returns. Schuerman assumed the parties deducted the mortgage interest on their tax returns. According to Schuerman, her name was on the homeowner's insurance policy along with the parties' names, but the parties paid for the insurance policy. Schuerman testified she began paying the homeowner's insurance in March 2018 when she discovered the default on the mortgage and had to make back payments to bring the mortgage current.

¶ 9        The trial court entered a lengthy written order, which provided, in part, as follows:

> "The 2111 Barberry Dr. Springfield, IL residence was purchased thirteen years ago and the mortgage is in Ms. Schuerman's name. The real estate taxes and homeowners insurance are escrowed. The parties were making all of the payments. She believed the payments were current, but later learned they were not. The parties' [*sic*] stopped paying the mortgage in 2017. The parties separated from 2015 to 2017. The mortgage was not being paid and foreclosure was threatened. Ms. Schuerman assisted [petitioner] financially. *** [Schuerman] details that she paid $16,188.04 toward the mortgage payment.

The parties had no written agreement. The mortgage and all the paperwork regarding the residence is in her name alone. She has never discussed the payments she has made with [respondent.] She admitted that the house is the Shafer's house and they could sell it and keep the proceeds if any. Respondent's exhibit #59 is a group text between Ms. Schuerman, [petitioner,] and [respondent] stating she wanted the mortgage out of her name as it was their house. The parties attempted to sell it in 2013 without success. She does not want to be involved in the house. The parties were to refinance the mortgage within eighteen months. She stated she was just assisting them with the mortgage. The parties claim the real estate taxes on their tax returns in 2017. All three parties are listed as homeowners for the insurance. The Shafer's [*sic*] paid and deducted the real estate taxes.

The court finds that the 2111 Barberry Dr., Springfield, IL residence is owned by the Shafer's [*sic*] and marital property. It is not the property of Ms. Schuerman. She helped the parties by placing the mortgage in her name; although, the parties paid it and it belongs to them. When the mortgage was not [being] paid by the parties, Ms. Schuerman paid the mortgage on the residence so it was not foreclosed upon and tarnish her credit. She is entitled to reimbursement from the parties for the mortgage payment she made in the amount of $16,188.04. Ms. Schuerman is entitled to

reimbursement of the mortgage payments she has made on behalf of the parties. A judgment is entered in favor of Diane Schuerman and against [petitioner] and [respondent] in the amount of $16,188.04. ***

The court orders that the marital residence shall be listed with an agreed-upon realtor and sold. After payment of the mortgage and realtor fees, Diane Schuerman shall be paid $16,188.04 reimbursement for the mortgage payments she has made. *** [Petitioner] shall receive sixty (60%) percent of any remaining net proceeds and [respondent] shall receive forty (40%) percent. The parties shall cooperate with the preparation and sale of the marital residence. [Petitioner] shall be responsible for the monthly mortgage payment and utilities. Both parties shall be responsible for the payment of any real estate taxes that are due prior to the sale of the residence."

¶ 10    In October 2019, respondent filed a petition for indirect civil contempt, alleging petitioner "[f]ailed to coordinate with [respondent] to place the Barberry residence for sale and informed [respondent] she was never going to sell the residence." At the hearing on the petition, petitioner testified she had not placed the house for sale because it was not hers to sell. When asked why she believed that, petitioner stated, "Because I'm not on the title, and the person who owns the home is not selling it at this point to my knowledge." In ruling on the petition for indirect civil contempt, the trial court stated,

"[Petitioner] has failed to comply with the [c]ourt's order to place the Barberry residence for sale as ordered by the [c]ourt. Her—you know, I'm not going to go through it all, but we had a trial, and her mother testified that it was the parties' property. I understand it's in her name. She wanted [it] out of her name, she wanted the parties to get rid of that property and sell it, and then only subsequent was it this position that it's not, in fact, the parties' house and there's this delay in the property being sold, so I am going to find [petitioner] in contempt for not cooperating with that provision in doing as ordered."

¶ 11 This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13 On appeal, respondent argues the trial court (1) lacked subject matter jurisdiction over the residence because neither party possessed an ownership interest in the property, (2) erred by ordering the parties to sell the property where the titled owner of the residence was a necessary and indispensable party and was not made party to the proceeding, and (3) abused its discretion in holding petitioner in contempt.

¶ 14                                    A. Jurisdiction

¶ 15 Respondent contends the trial court lacked subject matter jurisdiction over the Barberry residence because neither party possessed an ownership interest in the property.

¶ 16 "The absence or presence of jurisdiction is a purely legal question, and our review therefore is *de novo*." *In re Luis R.*, 239 Ill. 2d 295, 299, 941 N.E.2d 136, 139 (2010). With

only one exception not relevant here, the trial court's subject matter jurisdiction is conferred by the Illinois Constitution. *Id.* at 300. The constitution provides,

> "Circuit courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office. Circuit courts shall have such power to review administrative action as provided by law." Ill. Const. 1970, art. VI, § 9.

"Thus, except in the context of administrative review, an Illinois circuit court possesses subject matter jurisdiction as a matter of law over all 'justiciable matters' brought before it." *Luis R.*, 239 Ill. 2d at 300.

¶ 17 A justiciable matter is "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Bellville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334, 770 N.E.2d 177, 184 (2002). A complaint need only allege the existence of a justiciable matter and even a defectively stated claim sufficiently invokes the court's subject matter jurisdiction. *Id.* at 340. "In other words, the *only* consideration is whether the alleged claim falls within the general class of cases that the court has the inherent power to hear and determine." (Emphasis in original.) *Luis R.*, 239 Ill. 2d at 301. "Whether a justiciable matter is presented must be determined by the courts on a case-by-case basis." *McCormick v. Robertson*, 2015 IL 118230, ¶ 21, 28 N.E.3d 795.

¶ 18          Here, petitioner alleges the trial court lacked jurisdiction where neither party possessed an ownership interest in the property.  However, ownership interest of the parties is irrelevant to any jurisdiction analysis.  Whether or not the parties possessed an ownership interest in the property fails to speak to "whether the alleged claim falls within the general class of cases that the court has the inherent power to hear and determine." *Luis R.*, 239 Ill. 2d at 301.  In fact, petitioner's challenge amounts to an allegation the claim is defectively stated—a circumstance case law definitively establishes does not deprive the court of jurisdiction.  Ultimately, the identification and division of marital property falls within the category of cases the Illinois Constitution places within the trial court's subject matter jurisdiction.  Thus, the trial court properly exercised subject matter jurisdiction in this matter.

¶ 19          Although we have concluded the trial court had subject matter jurisdiction over this dispute, we briefly address whether the court properly identified the Barberry property as marital property.  The record indicates the parties purchased the Barberry property to be their marital home and the parties resided in the house for many years.  The parties paid the mortgage and homeowner's insurance.  Although Schuerman's name was the only name listed on the title, the record shows she agreed to take out a mortgage in her name because the parties' credit was insufficient to secure a loan.  Schuerman testified the intention was always to transfer the title of the property to petitioner and respondent once they sufficiently repaired their credit.  In the meantime, the parties were expected to make all mortgage payments and undertake all financial liabilities related to the home.  The record illustrates the parties did just that for many years, deducting mortgage interest from their income taxes and paying the real estate taxes for the property.  Although Schuerman assumed the mortgage payments in March 2018, she did so out of necessity to prevent her credit from being destroyed.  Moreover, Schuerman expressly

- 8 -

testified the parties could choose when to sell the property and they would bear all responsibility for any associated closing costs and would receive all the funds from such a sale. Finally, Schuerman acknowledged the property was an asset that would need to be divided in the divorce in text messages to the parties. Schuerman clearly considered the property to be the parties' and testified she would list the house for sale according to the parties' wishes.

¶ 20    The record demonstrates the parties had an equitable interest in the Barberry property even though the title was in Schuerman's name. Here, Schuerman would be unjustly enriched if the parties had no interest in the property where they paid the mortgage for many years, insured the home, and maintained and repaired the property. As respondent correctly points out, the parties could also pursue a constructive trust action if Schuerman refused to sell the Barberry property. See *Tummelson v. White*, 2015 IL App (4th) 150151, ¶ 27, 47 N.E.3d 579. "A constructive trust rectifies unjust enrichment, not just wrongdoing. 'When a person has obtained money to which he is not entitled, under such circumstances that in equity and good conscience he ought not retain it, a constructive trust can be imposed to avoid unjust enrichment.' " *Id.* (quoting *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 299, 735 N.E.2d 560, 565 (2000)). For the foregoing reasons, we conclude the trial court properly determined the parties had an interest in the Barberry property and that interest was acquired by the parties subsequent to their marriage.

¶ 21    We note petitioner asserts respondent may not raise the issue of an equitable interest or constructive trust because these issues were not properly pleaded or argued before the trial court. While it is generally true that issues not raised before the trial court are forfeited, "we review the trial court's judgment, not its rationale." *Tummelson*, 2015 IL App (4th) 150151, ¶ 25. Accordingly, we may affirm on any basis in the record. *Id.* Moreover, although the trial

court may not have used the terms "constructive trust" or "equitable interest" in rendering its decision, it clearly determined the Barberry property was marital property subject to division in the course of the dissolution proceedings.

¶ 22                                B. Order to Sell the Property

¶ 23        Respondent next contends the trial court erred by ordering the parties to sell the property where the titled owner of the residence was a necessary and indispensable party and was not made party to the proceeding.

¶ 24        In the absence of an abuse of discretion, the division of marital property will not be disturbed on appeal. *In re Marriage of Flemming*, 143 Ill. App. 3d 592, 595, 493 N.E.2d 666, 668 (1986). "A reviewing court will find an abuse of discretion in the division of marital property only where no reasonable person would have so allocated the property." *In re Marriage of Mayzner*, 144 Ill. App. 3d 645, 650, 494 N.E.2d 615, 618-19 (1986).

¶ 25        We note petitioner does not appeal the trial court's decision to split any remaining funds from the sale of the Barberry residence with 60% going to petitioner and 40% going to respondent. Rather, petitioner asserts it was an abuse of the trial court's discretion to order the sale of the marital home when Schuerman had not been made a party to the action. Petitioner does not address the fact that she failed to join Schuerman, apparently because she believes she will benefit from this failure by being able to remain in the house.

¶ 26        "The failure to join a necessary party may be raised at any time: by the parties or by the trial court or appellate court *sua sponte*." *Lah v. Chicago Title Land Trust Co.*, 379 Ill. App. 3d 933, 940, 885 N.E.2d 481, 487 (2008). "A necessary party is one whose presence in the suit is required for any of three reasons: (1) to protect an interest which the absentee has in the subject matter of the controversy which would be materially affected by a judgment entered in

his absence [citations]; (2) to reach a decision which will protect the interests of those who are before the court [citations]; or (3) to enable the court to make a complete determination of the controversy [citation]." *Lerner v. Zipperman*, 69 Ill. App. 3d 620, 623, 387 N.E.2d 946, 949 (1979).

¶ 27        As discussed above, the parties clearly have an equitable interest in the Barberry property and have the ability to assert that interest through a constructive trust or partition action. The trial court's order divided the parties' equitable interest in the property and ordered the sale of the home. Petitioner's agreement to sell the house is irrelevant. Moreover, we are not convinced Schuerman was a necessary party under the circumstances of this case. Schuerman testified the couple was free to decide to sell the home, she would do whatever necessary to list the property, and all proceeds, if any, would belong to the parties. Schuerman testified she no longer wanted her name associated with the mortgage on the Barberry property and she considered the property to belong to the parties. Under these circumstances, Schuerman's presence was not necessary to protect her interest because she specifically testified she would do whatever was necessary to list the house, she did not consider it her property, and she wanted out of the arrangement whereby she "accommodated" the parties by putting her name on the mortgage. Of course, if Schuerman refuses to list the property following this appeal, the trial court may *sua sponte* add her as a third party to address the parties' interest in the Barberry property.

¶ 28                                    C. Contempt

¶ 29        Finally, respondent contends the trial court abused its discretion in holding petitioner in contempt for failing to comply with the order to sell the Barberry property.

- 11 -

Specifically, petitioner contends she cannot comply with the court's order and, therefore, cannot be held in civil contempt.

¶ 30 "Civil contempt is 'designed to compel future compliance with a court order' and is 'avoidable through obedience.' " *Emery v. Northeast Illinois Regional Transportation Company*, 374 Ill. App. 3d 974, 977, 872 N.E.2d 485, 488 (2007). A person held in civil contempt must have the ability to purge the contempt by complying with the court order. *Pryweller v. Pryweller*, 218 Ill. App. 3d 619, 633, 579 N.E.2d 432, 442 (1991). "The offender must also have the power to comply with the order. Contempt will not lie when the alleged contemnor, through no fault of his own, is in a position where he cannot comply with the order of the court." *Id.* "A contempt order that does not impose sanctions is not final and not reviewable." *In re Estate of Hayden*, 361 Ill. App. 3d 1021, 1026, 838 N.E.2d 93, 98 (2005).

¶ 31 Here, the trial court found petitioner was in willful contempt for failing to comply with the order to place the Barberry residence for sale. The contempt order provided petitioner could purge herself of contempt "by complying with every provision of the [o]rders of the [c]ourt." Although the contempt order did require petitioner pay respondent's attorney fees associated with the petition for indirect civil contempt, the order imposed no sanctions. The record contains no other evidence that the court sanctioned petitioner for failing to comply with its orders. "Without the imposition of a monetary or other penalty, we do not have jurisdiction over the appeal of this issue." *Hayden*, 361 Ill. App. 3d at 1026. Accordingly, we decline to address this issue and dismiss the appeal as to the contempt order.

¶ 32                                    III. CONCLUSION

¶ 33 For the reasons stated, we affirm the judgment of the trial court but dismiss as to the contempt order.

¶ 34        Affirmed in part and dismissed in part.