2022 IL App (2d) 210459-U
No. 2-21-0459
Order filed August 12, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| BRENDA CULHANE, | ) | Appeal from the Circuit Court |
| | ) | of De Kalb County. |
| Plaintiff and Counterdefendant- | ) | |
| Appellee, | ) | |
| | ) | |
| v. | ) | No. 20 SC 560 |
| | ) | |
| DAVID ROBINSON, | ) | |
| | ) | Honorable |
| Defendant and Counterplaintiff- | ) | Thomas L. Doherty, |
| Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices Hudson and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court properly entered judgment in plaintiff's favor on her breach-of-contract claim against defendant. Plaintiff's reply to an allegation in defendant's affirmative defense did not amount to a judicial admission. The trial court did not err in determining the amount of the setoff. Affirmed.

¶ 2   Plaintiff, Brenda Culhane, filed a small claims breach-of-contract complaint against defendant, David Robinson, for failure to manufacture and install cabinets in her home. Defendant counterclaimed for breach of contract and, alternatively, a setoff. Following a bench trial, the trial court entered judgment in favor of plaintiff and against defendant for $6200, less a setoff of $550

for work performed. The trial court subsequently denied defendant's posttrial motion. For the reasons set forth below, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    We recount the procedural history, trial proceedings, and posttrial proceedings.

¶ 5                                    A. Pleadings

¶ 6    Plaintiff filed her complaint on September 17, 2020.[1] In her breach-of-contract claim, plaintiff alleged that, on August 22, 2019, she entered into a written contract with defendant pursuant to which defendant agreed to manufacture and install new kitchen and laundry room cabinets in her home. The contract, attached as an exhibit to the complaint, provided that the total cost of the project was $12,400. The project was described as follows: "Manufacture and install new kitchen and laundry room cabinet [*sic*] in red oak or painted in the color of the customer's choosing per five drawings provided. The doors and drawers will be soft close. Installation or purchase of lazy susans are not included in this estimate."

¶ 7    In addition, the contract noted:

> "Though we try to stick to a schedule sometimes jobs take longer than anticipated or outside influences interrupt our schedule, that said we work in order of sale date and your project will be started when the previous contract signed is completed.

---

[1]Initially, plaintiff pled three counts: breach of contract, violation of the Home Repair Fraud Act (815 ILCS 515/1 *et seq.* (West 2020)), and violations of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2020)). During trial, however, plaintiff dismissed the latter two counts and proceeded only on the breach-of-contract claim.

A 50% [] deposit is required to add you to our schedule and the remainder when the job is done. A credit of $2,500.00 paid on 8/5/19 will be credited to this estimate leaving a balance of $10,000.00 which leaves a deposit balance [o]f $3,700.00 of $6,200.00 deposit amount."

¶ 8    Plaintiff alleged that, in August 2019, she paid defendant a total of $6200 as a deposit for the project. However, plaintiff alleged that defendant "failed to complete his obligations under the contract" and "failed to perform any part of the work he agreed to perform." Plaintiff sought, *inter alia*, judgment in her favor in the amount of $6200 for the sum paid to defendant.

¶ 9    Defendant filed an answer to the complaint and affirmative defenses. In relevant part, defendant raised as an affirmative defense the plaintiff's failure to perform a condition precedent to performance of the contract—namely, the failure to choose one of the design drawings prepared by defendant (second affirmative defense). In paragraph 2 of the second affirmative defense, defendant alleged, "Plaintiff materially breached the agreement almost immediately when she failed and refused to choose one of the drawing style [*sic*] so cabinet manufacture could begin." Defendant further alleged that plaintiff's failure "to perform her obligation to select [] a style of cabinet and door choice prevented defendant from manufacturing the cabinets." In paragraph 16 of the second affirmative defense, defendant alleged that, "[a]s a result, plaintiff may not be heard to complain about any alleged non-performance by defendant because defendant's performance was prevented by plaintiff's material failure to make a final choice of cabinet/door selection."

¶ 10    Defendant also filed counterclaims for breach of contract and, alternatively, a setoff. In the breach-of-contract counterclaim, defendant alleged that plaintiff "materially breached the agreement almost immediately when she failed and refused to choose one of the drawing[s] from those identified in the contract so cabinet manufacture could begin." Defendant further alleged that

plaintiff repeatedly changed her mind and then stated that she "wanted a cabinet door style different tha[n] any of the five drawing choices designated in the contract." Thus, defendant met with plaintiff "on multiple occasions" and provided "multiple revisions to five drawings." Nevertheless, plaintiff never chose a design. Defendant sought, *inter alia*, judgment in his favor in the amount of $6200 as compensation for "the time and effort he expended in an attempt [to] cause plaintiff to perform her obligations under the agreement ***."

¶ 11 In the setoff counterclaim, defendant alternatively sought a setoff from any judgment in plaintiff's favor for the time and expense he incurred due to plaintiff's failure to select one of the five drawings specified in the parties' contract and the "additional time and expense [defendant] expended in trying to mitigate the plaintiff's failure to perform." Defendant also sought "to keep the funds in his possession to compensate him for the time and effort he expended as a set off and as may be determined by the Court."

¶ 12 Plaintiff filed an answer to the counterclaim and a reply to the affirmative defenses. Of note, in reply to paragraph 2 of defendant's second affirmative defense, plaintiff stated, "Plaintiff *denies* Paragraph Two of Defendant's Affirmative Defense." (Emphasis added.) In reply to paragraph 16 of defendant's second affirmative defense, plaintiff stated, "Plaintiff *admits* Paragraph Sixteen of Defendant's Affirmative Defense." (Emphasis added.)

¶ 13                                           B. Trial

¶ 14 The matter proceeded to a bench trial on July 14, 2021. Both plaintiff and defendant testified.

¶ 15                                  1. Plaintiff's Testimony

¶ 16 On direct examination, plaintiff testified that defendant came to her home a total of three times in conjunction with the project. On the first visit, defendant measured the cabinets and also

performed work relating to staining and reinstalling wood for her staircase. During the second visit, they discussed "what we were going to do with the cabinets and what I wanted him to do." On the third visit, defendant provided the estimate for the project. Plaintiff testified that she paid defendant $6200.

¶ 17    According to plaintiff, defendant provided her five design drawings for the cabinets, and she selected one of the drawings but "wanted to see the doors first." Plaintiff testified that defendant never provided the requested door. The cabinets were not installed in 2019 as planned, and plaintiff "let it go" until she returned in March 2020 from a vacation in Florida. Plaintiff testified that she was willing to let defendant complete the project but that there subsequently came a time when defendant refused to speak to her because, according to defendant, plaintiff insulted him. Plaintiff further testified regarding purported delays occasioned by defendant during this time period and what plaintiff characterized as "excuses" proffered by defendant.

¶ 18    On cross-examination, defendant's counsel questioned plaintiff about the five design drawings as follows:

"Q. Did you receive five drawings at or about the time the agreement was entered into?

A. Yes.

Q. Okay. Which of those drawings did you pick to go forward with?

A. I'm sorry, it's been two years ago. I don't remember.

Q. Isn't it in fact true that on or about August of 2019 you didn't pick any one of those drawings, you weren't satisfied with any of the drawings?

A. I didn't say that. I said—I said I don't remember."

¶ 19    Plaintiff also acknowledged that defendant provided her with three additional design drawings. In response to whether she chose a color for the cabinets, plaintiff testified that she decided to stain the cabinets and relayed that decision to defendant. Plaintiff testified that she subsequently went on a three-month vacation. Plaintiff acknowledged her discussions with defendant regarding the fact that he was a "one-man shop" and that completion of the project would be delayed if there were any changes to the schedule.

¶ 20    Defendant's counsel proceeded to question plaintiff regarding her reply to paragraph 16 of defendant's second affirmative defense, in which she admitted that she "may not be heard to complain about any alleged non-performance by defendant because defendant's performance was prevented by plaintiff's material failure to make a final choice of cabinet/door selection." However, plaintiff's counsel interjected: "Judge, we'd stipulate that it does say that in the pleading that I, when I was doing copying and pasting, answered that, but that's not my client's testimony and that's not her answer. She's denying that." Defendant's counsel responded: "Judge, he's doing—he is trying to—to guide her answer. That's not a proper objection." Ultimately, the trial court instructed defendant's counsel to repeat the question. Plaintiff testified that the allegation was not true and that she was not aware of her reply. However, plaintiff acknowledged that she had previously testified that she had discussed the reply with her attorney and believed that everything in the pleading was true and accurate.

¶ 21    At the conclusion of plaintiff's testimony, defendant moved for a directed finding on the basis that plaintiff "admitted she was in material breach of the contract." The trial court denied the motion, stating, "Looking at the information here most favorable, it's unwarranted."

¶ 22                           2. Defendant's Testimony

¶ 23    Defendant testified on direct examination that he is a custom cabinetmaker and has operated his own business for 21 years. According to defendant, he was ready, willing, and able to perform the contract with plaintiff, but plaintiff's failure to make final decisions on the product prevented his performance. Defendant testified that he made multiple trips to plaintiff's home, took measurements, and, in anticipation of completing the contract, created several sets of drawings. Defendant elaborated that each of the eight drawings were hand drawn with a ruler and ink "from scratch" and that each drawing took four to six hours depending on the complexity. Defendant further testified that, as a result of plaintiff's failure to choose a cabinet door, he had to "delay other jobs" and "refuse contracts that I could have taken, because I was trying to hold the spot open for her."

¶ 24    Defendant testified that, at some point, plaintiff demanded a refund of her deposit, but he refused because he considered the matter an open contract. Defendant itemized the $12,400 estimate for the project as follows: one-third for preparatory work, one-third for "hard costs," and one-third for profit.

¶ 25    On cross-examination, defendant testified that, given the length of time that had passed, he could not state the names of customers whose contracts he had refused because of plaintiff's purported conduct. Defendant further explained that he prepared the design drawings "freehand," not with a template.

¶ 26    Following defendant's testimony, defendant's counsel moved for judgment on the breach-of-contract counterclaim on the basis that "plaintiff has admitted that she materially breached the contract." Plaintiff's counsel responded: "Judge, my client did not admit that. What it was is copying and paste [*sic*] from there." Counsel elaborated: "If you go to the second paragraph of the same affirmative defense, which is almost identical, [plaintiff] denies it. They're inconsistent."

Defendant's counsel replied that, given plaintiff's admission in a verified pleading that she materially breached the contract, plaintiff "cannot recover on a contract which she has materially breached. That's the law." Thus, counsel argued, "not only is [plaintiff] not entitled to compensation on her contract, having admitted she is in breach, my client is entitled to—to a judgment on his—on his counterclaim."

¶ 27    The trial court stated: "So you're suggesting that that alleged admission supersedes all the testimony that we've heard today." Defendant's counsel argued that an admission in a verified pleading cannot be refuted by subsequent contrary testimony. Plaintiff's counsel responded, "It's not verified, Judge I did it, not my client." After defendant's counsel stated that it was "double-checking to see if there's a verification," the trial court concluded: "[W]hether there is or not, *** my ruling is going to be that the testimony that I heard today supersedes whatever error may have been in that particular document."

¶ 28                                3. Trial Court's Ruling

¶ 29    Following the testimony and closing arguments, the trial court entered judgment in favor of plaintiff and against defendant, finding that defendant breached the contract. The trial court further found it "incredulous that a skilled contractor with 20 years of experience" would take four to six hours for each drawing. The trial court also took judicial notice that "I've looked at cabinets" and had seen similar designs. Thus, the trial court entered judgment in favor of plaintiff and against defendant for $6200 plus costs for the filing and service fees, less a setoff of $550 for work performed, including $300 for preparation, $100 for travel, and $150 for visits to plaintiff's home. Accordingly, the trial court's July 14, 2021, written order reflected judgment in favor of plaintiff and against defendant in the amount of $5650 (plus courts costs of $430.01).

¶ 30                                C. Posttrial Proceedings

¶ 31    Defendant timely filed a motion to reconsider and vacate or, alternatively, to reduce the judgment by the amount of lost profits. Defendant argued that the trial court erroneously ruled that it could consider plaintiff's trial testimony regarding her selection of a design, notwithstanding her admission to paragraph 16 of defendant's second affirmative defense. Defendant also argued that the trial court erroneously held that defendant could not recover for lost profits.

¶ 32    On September 22, 2021, following oral argument on the motion, the trial court denied defendant's motion. The trial court found that, notwithstanding the argument regarding admission of paragraph 16 of the second affirmative defense, the issue of any nonperformance of the contract was not determinative in its ruling and that defendant's argument was based upon a "technicality." Regarding lost profits, the trial court noted that "the defendant did not have to perform, he did not have to build the cabinets, yet he wanted to get paid for it. I struggle with that. I truly struggle with that." Ultimately, the trial court denied defendant's posttrial motion in its entirety.

¶ 33    Defendant timely appealed.[2]

¶ 34                                    II. ANALYSIS

¶ 35 Defendant argues that the trial court's judgment should be reversed on the basis that plaintiff judicially admitted her failure to choose a cabinet design—a purported breach of the

---

[2]Defendant filed his notice of appeal prior to the trial court's ruling on his posttrial motion. We nevertheless have jurisdiction pursuant to Illinois Supreme Court Rule 303(a)(2) (eff. July 1, 2017) ("When a timely postjudgment motion has been filed by any party, whether in a jury case or a nonjury case, a notice of appeal filed before the entry of the order disposing of the last pending postjudgment motion, or before the final disposition of any separate claim, becomes effective when the order disposing of said motion or claim is entered. ***").

contract and condition precedent to defendant's performance of the contract. According to defendant, judgment should be entered in his favor on the competing breach-of-contract claims. Alternatively, defendant argues that the judgment should be reduced by $4100 to reflect his lost profits. For these reasons, defendant also argues that the trial court erred in denying his posttrial motion. We disagree, as set forth below.

¶ 36    Preliminarily, we point out that plaintiff has not filed an appellee's brief. In the absence of an appellee brief, a reviewing court may exercise one of three options: "(1) it may serve as an advocate for the appellee and decide the case when the court determines justice so requires, (2) it may decide the merits of the case if the record is simple and the issues can be easily decided without the aid of the appellee's brief, or (3) it may reverse the trial court when the appellant's brief demonstrates *prima facie* reversible error that is supported by the record." *Thomas v. Koe*, 395 Ill. App. 3d 570, 577 (2009) (citing *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976)). Here, the record is straightforward, and the issues involve the application of well-established principles of contract law and the precepts governing a judicial admission. We turn to the merits.

¶ 37    The standard of review following a bench trial is whether the trial court's judgment is against the manifest weight of the evidence. *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 859 (2008). A judgment is against the manifest weight of the evidence when the opposite conclusion is apparent or when the findings are unreasonable, arbitrary, or not based on the evidence. *Id.*

¶ 38                                    A. Judicial Admission

¶ 39    A judicial admission is a " 'deliberate, clear, unequivocal statement[] by a party about a concrete fact within that party's knowledge.' " *1550 MP Road LLC v. Teamsters Local Union No.*

*700*, 2019 IL 123046, ¶ 37 (quoting *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998)). The statement must concern a concrete fact, not merely a matter of opinion, estimate, appearance, inference, or uncertain summary. *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754, ¶ 89. A judicial admission has the effect of withdrawing a fact from issue and dispensing with the need to prove that fact; a judicial admission cannot be contradicted at trial. *Id.* "The purpose of the rule is to remove the temptation to commit perjury." *Rennick*, 181 Ill. 2d at 407. Whether a statement is a judicial admission must be determined under the circumstances of each case, and each statement must be given meaning consistent with the context in which it was found. *In re Marriage of Hundley*, 2019 IL App (4th) 180380, ¶ 118. The statement also must be considered in relation to the other testimony and evidence presented. *Smith v. Pavlovich*, 394 Ill. App. 3d 458, 468 (2009).

¶ 40     The question of whether a statement constitutes a judicial admission has been reviewed on appeal under both the *de novo* and abuse-of-discretion standards of review. See *Pepper Construction Co.,* 2016 IL App (1st) 142754, ¶ 90 (collecting cases). Regardless of which standard applies, the proffered statement does not constitute a judicial admission.

¶ 41     Initially, defendant argues that plaintiff's counsel improperly relied upon the unverified nature of plaintiff's reply to the affirmative defenses to refute the finding of a judicial admission. See *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538, 558 (2005) ("An admission in an unverified pleading signed by an attorney is binding on the party as a judicial admission"). However, this was not the basis of the trial court's ruling. Rather, in response to the dispute about whether the reply was verified by plaintiff (it was not), the trial found concluded that, regardless, plaintiff's testimony at trial "supersedes whatever error may have been in that particular document."

¶ 42   Nonetheless, defendant contends that the trial court failed to recognize that a judicial admission cannot be contradicted at trial and improperly equated a judicial admission to a technicality. Even if we agreed with defendant's characterization of the trial court's rationale, we may affirm the trial court's judgment on any ground supported by the record. See *Tummelson v. White*, 2015 IL App (4th) 150151, ¶ 26. Our review of the record demonstrates that the trial court properly entered judgment in plaintiff's favor.

¶ 43   First, a judicial admission is an unequivocal statement about a *concrete fact* within the party's knowledge. See *1550 MP Road LLC*, 2019 IL 123046, ¶ 37. A party is not bound by an admission regarding a conclusion of law because legal issues are questions for the court to decide. *Id.* Paragraph 16 of the second affirmative defense encompassed a legal conclusion—that plaintiff "may not be heard to complain" about defendant's alleged nonperformance because of her purported "material" failure to choose a cabinet design. A party cannot judicially admit the legal effect of the facts presented. See *Royalty Farms, LLC v. Forest Preserve District of Cook County*, 2017 IL App (1st) 161409, ¶ 26 ("Royalty Farms could not judicially admit that [the Forest Preserve District] terminated the lease because the parties cannot judicially admit the legal effect of the facts adduced.").

¶ 44   Moreover, considering, as we must, the meaning of the challenged statement within its context and circumstances of the case (see *Marriage of Hundley*, 2019 IL App (4th) 180380, ¶ 118), the entirety of plaintiff's reply to the second affirmative defense also reflects that plaintiff, consistent with her trial testimony, effectively denied that she failed to choose a cabinet design. Indeed, while plaintiff admitted the allegation in paragraph 16 that she "may not be heard to complain about any alleged non-performance by defendant because defendant's performance was prevented by plaintiff's material failure to make a final choice of cabinet/door selection," she

categorically denied the allegation in paragraph 2 that she "materially breached the agreement almost immediately when she failed and refused to choose one of the drawing style [*sic*] so cabinet manufacture could begin." Plaintiff's statement must be given meaning consistent with the context in which it was found. In doing so, we simply cannot say that plaintiff's admission to paragraph 16 amounted to a deliberate, clear, and unequivocal statement about a concrete fact, especially given the contrary reply to paragraph 2. See *1550 MP Road LLC*, 2019 IL 123046, ¶ 37. Thus, the challenged statement did not amount to a judicial admission.

¶ 45    As a final matter, we note plaintiff's counsel's representation to the trial court that the admission to the allegation in paragraph 16 was the result of inadvertence. While we express no opinion on the propriety of repudiating the purported admission in this manner, we are mindful of the principle that "any admissions *not the product of mistake or inadvertence* become binding judicial admissions." (Emphasis in original and internal quotation marks omitted.) *North Shore Community Bank & Trust Co. v. Sheffield Wellington LLC*, 2014 IL App (1st) 123784, ¶ 126. In sum, we are not persuaded that the underlying purpose of the judicial admission doctrine—to remove the temptation to commit perjury (see *Rennick*, 181 Ill. 2d at 407)—would be served in this case. Accordingly, we cannot say that the trial court's judgment was against the manifest weight of the evidence.

¶ 46                                    B. Lost Profits

¶ 47    Lost profits are recoverable as damages for a breach of contract if the lost profits are proved within a reasonable degree of certainty; the profits were reasonably contemplated at the time the contract was entered into; and the trial court "is satisfied the wrongful act of the defendant caused the loss of profits." *Chung v. Pham*, 2020 IL App (3d) 190218, ¶ 92. Defendant argues that he established his lost profits with reasonable certainty given his testimony that he expected to earn a

profit of one-third of the amount of the project, or $4100. He also argues that there was no evidence that plaintiff thought that defendant "was gifting her with his work and produc[t]." Thus, defendant argues that the judgment in plaintiff's favor should have been reduced by an additional $4100.

¶ 48     In addition to noting the cursory proof of the purported lost profits, we point out that defendant skips an element—that the wrongful acts of plaintiff (or, more precisely here, the wrongful acts of counterdefendant, given that the argument is raised in the procedural context of a counterclaim), caused the lost profits. Indeed, defendant's argument that he was entitled to lost profits appears to rest on the faulty premise that he prevailed in the underlying action. The trial court, however, entered judgment in plaintiff's favor but allowed a setoff of $550 for work defendant had performed. Defendant sought the setoff as an *alternative* basis for relief in the event the court entered judgment in plaintiff's favor. To the extent defendant simply challenges the amount of the setoff, he presents no persuasive basis upon which to conclude that the trial court erred in calculating the amount of the setoff. We thus reject defendant's argument.

¶ 49                                    III. CONCLUSION

¶ 50     For the reasons stated, we affirm the judgment of the circuit court of De Kalb County.

¶ 51     Affirmed.