2019 IL App (1st) 180173

SIXTH DIVISION
SEPTEMBER 13, 2019

1-18-0173, 1-18-1563 Cons.

| | | |
|---|---|---|
| ACCESS REALTY GROUP, INC., as Successor by Assignment from SFG Capital, LLC, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff and Third-Party Citation Petitioner-Appellant, | ) ) ) | |
| v. | ) ) | |
| PATRICK W. KANE, | ) ) | No. 10 L 0820 |
| Defendant-Appellee | ) ) | |
| (First Midwest Bank, as Successor in Interest to Bridgeview Bank Group; and Gozdecki, Del Giudice, Americus, Farkas & Brocato, LLP, | ) ) ) ) | |
| Third Party Citation Respondents-Appellees). | ) ) ) ) | Honorable Alexander P. White, Judge Presiding. |
| _____ | ) ) | |
| ACCESS REALTY GROUP, INC., as Successor by Assignment From SFG Capital, LLC | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 17 L 5670 |
| PATRICK W. KANE, WILLIAM KANE, VICTORIA GOLDBLATTS-KANE, and FIRST MIDWEST BANK, as Successor in Interest to Bridgeview Bank Group, | ) ) ) ) ) | |
| Defendants-Appellees. | ) ) ) | Honorable Brigid Mary McGrath, Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Justice Harris concurred in the judgment and opinion.
Justice Delort dissented, with opinion.

## OPINION

¶ 1    The circuit court of Cook County dismissed a citation proceeding by the plaintiff-

appellant, Access Realty Group, Inc. (Access), against the defendant-appellee, Patrick W. Kane (Kane), on the basis that the *merger doctrine* satisfied the judgment debt. In a separate lawsuit, Access sought damages related to the same judgment debt from the defendants-appellees, Kane, William Kane, Victoria Goldblatts-Kane, and First Midwest Bank (collectively, the defendants). The circuit court dismissed that lawsuit on the basis that Access was no longer a judgment creditor because the judgment debt had been satisfied. Access now appeals both orders, which have been consolidated in this court. For the following reasons, we affirm the judgments of the circuit court of Cook County.

¶ 2                                    BACKGROUND

¶ 3                              The Citation Proceeding

¶ 4      In 2010, SFG Capital, LLC (SFG),[1] filed a lawsuit against Kane, alleging that Kane defaulted on a loan from SFG. The parties settled, and in 2011, the trial court entered a $783,000 consent judgment against Kane (the SFG judgment). SFG then initiated a supplementary proceeding to identify any assets available to satisfy the SFG judgment (the citation proceeding).

¶ 5      In 2012, Kane's estranged business partner, William Platt (Platt), executed a promissory note with a face value of $1.2 million, payable to Kane (the Platt note).

¶ 6      On April 14, 2016, as part of the citation proceeding, the trial court ordered that all right, title, and interest in the Platt note be transferred from Kane and assigned to SFG (the turnover order). The turnover order instructed that SFG "may take such further action as necessary to enforce payment on the *** note[ ]" so that SFG could use the proceeds from the Platt note to pay off the SFG judgment. As the face value of the Platt note exceeded the amount outstanding

---

[1]SFG is Access' predecessor in interest, and is not a party to this appeal.

on the SFG judgment, the turnover order also required SFG to return the Platt note to Kane once the "judgment due and owing is paid in full."

¶ 7    On April 14, 2017, Access acquired the SFG judgment through an assignment. Access is a real estate brokerage and management company. Platt is Access' sole shareholder, president, secretary, and registered agent. At the time of the assignment, $527,384.58 remained outstanding on the SFG judgment.

¶ 8    After acquiring the SFG judgment, Access substituted into the citation proceeding as the judgment creditor. Access then issued third-party citations to discover assets to Bridgeview Bank Group[2] (one of Kane's financial institutions) and Gozdecki, Del Giudice, Americus, Farkas & Brocato, LLP (Kane's previous legal counsel).

¶ 9    On September 21, 2017, Kane moved to dismiss the citation proceeding. Kane argued that once SFG assigned the SFG judgment to Access, the *merger doctrine* extinguished the judgment debt. Specifically, Kane claimed that Platt "alone controls [Access] as an 'instrumentality' to conduct his own personal affairs." Kane argued that Platt's interest in the proceeds of the SFG judgment merged with his obligation as the payor of the Platt note, which had been turned over to satisfy the SFG judgment.

¶ 10    On January 18, 2018, following a hearing on Kane's motion to dismiss the citation proceeding, the trial court entered an order ruling on the motion (the January 18, 2018, order). The court noted that the turnover order limited the judgment creditor's recovery against the Platt note to the balance owing on the SFG judgment. The court also noted that "Platt, through Access, the company he wholly owns and controls, acquired the SFG judgment from SFG, including all rights to collect the SFG judgment." The court held that "Platt, through Access, ***

_____

[2]First Midwest Bank is the successor in interest to Bridgeview Bank Group.

has become both the creditor and debtor on the Platt note" such that "his interests have merged pursuant to the *merger doctrine*," thereby extinguishing his debt. The court then dismissed the citation proceeding on the basis that the SFG judgment had been satisfied through the *merger doctrine*.

¶ 11    Access then petitioned for revival of the SFG judgment. The trial court denied the petition as moot because the January 18, 2018, order found that the SFG judgment had been satisfied (the February 1, 2018, order). The court also ordered Access to return the Platt note to Kane. Access then moved for reconsideration of the January 18, 2018, and the February 1, 2018, orders. The trial court denied the motion.

¶ 12    Access subsequently appealed the January 18, 2018, and February 1, 2018, orders, as well as the order denying its motion for reconsideration.

¶ 13                    The Uniform Fraudulent Transfer Act Lawsuit

¶ 14    In a separate lawsuit, Access sought damages from the defendants based on alleged violations of the Uniform Fraudulent Transfer Act (UFTA) (740 ILCS 160/1 *et seq.* (West 2016)) related to the debt from the SFG judgment (the UFTA lawsuit). Once the trial court in the citation proceeding found that the SFG judgment had been satisfied, the defendants moved to dismiss the UFTA lawsuit pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2016)). The defendants argued that Access lacked standing to bring a fraudulent transfer claim because Access was no longer a judgment creditor.

¶ 15    The trial court agreed with the defendants and held that Access lost standing to bring the UFTA lawsuit once the ruling in the citation proceeding found that the SFG judgment had been satisfied. The court additionally found that Access was collaterally estopped from litigating the UFTA lawsuit. The trial court explained: "There has been a judicial determination that *** there

- 4 -

is no debt owed." The court granted the defendants' motion to dismiss the UFTA lawsuit and canceled a *lis pendens* recorded against Kane's property (the UFTA dismissal).

¶ 16    Access moved for reconsideration of the UFTA dismissal, which the trial court denied. Access then appealed the UFTA dismissal, as well as the order denying its motion for reconsideration.

¶ 17                                             ANALYSIS

¶ 18    We note that we have jurisdiction to consider the merits of this appeal. Access filed timely notices of appeal following the final orders in the citation proceeding and in the UFTA dismissal. This court subsequently consolidated both matters on appeal. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 19    On appeal, Access challenges: (1) the trial court's order dismissing the citation proceeding; (2) the trial court's order denying Access' motion to reconsider the dismissal of the citation proceeding; (3) the trial court's order denying Access' petition to revive the SFG judgment; (4) the trial court's order dismissing the UFTA lawsuit; and (5) the trial court's order denying Access' motion to reconsider the dismissal of the UFTA lawsuit. Although Access frames its arguments as several different issues for this court to review, its arguments challenging all five orders amount to the same issue: whether the *merger doctrine* satisfied the SFG judgment. This case presents a novel opportunity to analyze the *merger doctrine* under a unique set of facts.[3]

¶ 20    Access argues that the SFG judgment was never satisfied because the *merger doctrine* is inapplicable to these facts. Specifically, Access claims that the borrower of the Platt note is Platt,

---

[3]During oral arguments before this court, Kane's counsel indicated that there are no relevant cases analogous to the facts of this case, and our research has revealed none.

an individual shareholder and officer, whereas the creditor of the judgment is Access, a corporation, and thus they are separate entities precluding the application of the *merger doctrine*. Alternatively, Access claims that Kane failed to show that Access accepted the Platt note as payment in satisfaction of the SFG judgment.[4] Accordingly, Access claims that the SFG judgment was not satisfied and so the trial court's dismissals of the citation proceeding and the UFTA lawsuit were improper.[5]

¶ 21    " 'Satisfaction' " of judgment is " '[t]he discharge of an obligation by paying a party what is [awarded] to him.' " *Dolan v. Gawlicki*, 272 Ill. App. 3d 165, 166 (1995) (quoting Black's Law Dictionary 1342 (6th ed. 1990)). "Issues of fact surrounding the satisfaction of judgments are best left to the discretion of the trial court, and the trial court's judgment should not be disturbed absent an abuse of that discretion." *Id.* An abuse of discretion occurs when a trial court's decision is arbitrary, fanciful, unreasonable, or where no reasonable person would adopt the court's view. *Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶ 81.

¶ 22    Here, the trial court found that the SFG judgment was satisfied through the *merger doctrine*. The *merger doctrine* provides that when one person, who is bound to pay an obligation, also becomes entitled to receive that same obligation, there is an extinguishment of rights. *In re Estate of Ozier*, 225 Ill. App. 3d 33, 36 (1992). Once the debtor and creditor become the same

---

[4]Access purports to make numerous other arguments, including that a public sale of the Platt note was an adequate remedy at law, that adjudicated debts cannot be set off against final judgments, and that the trial court misapplied the "doctrine of charges." However, Access did not raise these arguments until its motions for reconsideration. It is well settled that arguments raised for the first time in a motion for reconsideration in the circuit court are forfeited on appeal. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36. Thus, Access has forfeited these arguments. We note however, that forfeiture aside, these arguments are meritless.

[5]We note that Access also argues that the trial court "should have delayed its ruling" on the defendants' motion to dismiss the UFTA lawsuit. Access claims that because its appeal from the citation proceeding was pending at the time, the trial court in the UFTA lawsuit should have stayed proceedings to avoid creating "conflicting judgments" in this court. However, as this court has consolidated both cases on appeal, this argument is moot.

person, there can be no right to be executed. *Id.*

¶ 23    As an initial matter, we address Access' argument that the *merger doctrine* applies only to mortgages. Access bases this argument on the fact that the majority of cases regarding the *merger doctrine* involve "debt secured by liens on real estate."[6] However, mortgages are the most common form of security on a debt, so it naturally follows that most merger cases involve mortgages. There is no authority limiting the application of the *merger doctrine* only to mortgages and we accordingly reject this argument.

¶ 24    We are not persuaded by Access' argument that the *merger doctrine* is inapplicable in this case because Access, the creditor of the Platt note, and Platt, the debtor of the Platt note, are separate entities. We acknowledge that Access, as a corporation, technically acquired the SFG judgment and that a corporation is a legal entity separate from its shareholders. See *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 500 (2005). However, a court may disregard a corporate entity where the corporation is merely the alter ego or business conduit of another person. *Id.* As the dissent in this case notes, determining whether a separate corporate entity exists generally applies to a veil-piercing fact scenario. That is not the issue in this case; consequently, the trial court did not engage in a veil-piercing analysis. Still, as the dissent also notes, some of the principles and tenets of the veil-piercing doctrine similarly apply to our analysis of whether Access and Platt share the same qualities for purposes of the *merger doctrine*.

¶ 25    In fact, some of the factors to consider listed by the dissent actually highlight that Access does not function as a separate entity from Platt, *i.e.,* whether the corporation is only a mere

_____

[6]During oral arguments before this court, Access' counsel conceded that the *merger doctrine* does not apply only to mortgages, but still argued that it applies only to real property.

facade for the operation of the dominant stockholders. Platt is Access' *sole shareholder, president, secretary, and registered agent*. And Access never denied that Platt controls Access and uses it as an instrumentality to conduct *his personal business*. If we accept the dissent's analysis, we believe we would be exalting form over substance. Platt exclusively controls the decision of whether Access would sue Platt to recover the SFG judgment debt, which is nonsensical. It would be unsound and an absurd result to permit Platt, through the company he wholly owns and controls, to hold his own note and fail to pay himself, and then collect the SFG judgment from Kane's other assets.

¶ 26    Most importantly, for purposes of the *merger doctrine*, the relevant inquiry is whether the *qualities* of debtor and creditor have become united in the same individual. *Donk Bros. & Co. v. Alexander*, 117 Ill. 330, 338 (1886).[7] Undoubtedly here, the qualities of the debtor and creditor are united in Platt. Platt was the debtor on the Platt note, which had been turned over to pay off the SFG judgment; Access, which Platt *wholly owns and controls*, then acquired the SFG judgment and became the judgment creditor. Stated another way, Platt was entitled to receive the $527,384.58 balance owing on the SFG judgment as the sole shareholder of Access. At the same time, Platt was the payor on the Platt note, and he was bound to pay Access, his own company, $527,384.58 because the trial court had ordered that the Platt note be turned over to pay off the SFG judgment. Thus, Platt was on both sides of the same obligation.

¶ 27    We emphasize that the *merger doctrine* is fact specific. The dissent's conclusion about shareholder loans is inapplicable to our analysis, as we do not imply nor do we assert that the *merger doctrine* would automatically extinguish loans between a sole shareholder and his

---

[7]*Donk*, although decided in 1886, is nevertheless relevant to our analysis of this novel issue under these facts.

corporation. We confine our analysis to the unique facts of this case, in which the qualities of the debtor (Platt) clearly united with the qualities of the creditor (Access) to trigger the *merger doctrine*.

¶ 28    We also reject Access' argument that Kane failed to show that Access accepted the Platt note as payment for the SFG judgment. It is clear that Platt orchestrated the scenario in which he finds himself and strategized to be in control of the SFG judgment. The trial court entered the turnover order, explicitly instructing Kane to turn over the Platt note to SFG in order to pay off the SFG judgment. Following the turnover order, Access *voluntarily and intentionally* chose to step into SFG's shoes as judgment creditor, although the trial court had *already* ordered the turnover of the Platt note to pay off the SFG judgment. And the trial court's turnover order explicitly stated that the judgment creditor has the right "to enforce payment" on the Platt note. This arrangement did not require Access to accept the Platt note as payment for the SFG judgment. Moreover, merger is an operation of law and extinguishes the obligation automatically. *Id*.

¶ 29    Finally, we reject Access' claim that the trial court lacked the equitable power to find the SFG judgment satisfied. It is well established that trial courts have inherent equitable power to determine whether a judgment has been satisfied. See *Sandburg v. Papineau*, 81 Ill. 446, 449 (1876) (courts have the "power, in all cases, to compel credits on judgments or executions, where it would be illegal or inequitable to proceed to collect the amount claimed"); *Gatto v. Walgreen Drug Co.*, 23 Ill. App. 3d 628, 643 (1974) ("the amount of the execution to be issued upon [a] judgment is subject to the legal and equitable control of the court"), *rev'd on other grounds*, 61 Ill. 2d 513 (1975).

¶ 30    When Platt, through Access, became the creditor of the Platt note, to which he was

already the debtor, the debt was extinguished through the *merger doctrine*. Consequently, the SFG judgment was satisfied, as the Platt note had been turned over to pay off the SFG judgment. Accordingly, the trial court properly dismissed the citation proceeding and the UFTA lawsuit on the basis that the SFG judgment had been satisfied.

¶ 31                                             CONCLUSION

¶ 32    For the foregoing reasons, we affirm the judgments of the circuit court of Cook County.

¶ 33    Affirmed.

¶ 34    JUSTICE DELORT, dissenting:

¶ 35    At the core of this case is the question of whether, after the circuit court entered the turnover order, Platt was both the obligor and obligee on the Platt note. The circuit court found, and the majority opinion affirms, that he was. I would hold that he was not. Although Platt was the obligor, it was Access—a corporation with a distinct legal existence—that received the Platt note as a result of the turnover order. This is an important and crucial distinction.

¶ 36    "A corporation is a legal entity which exists separate and distinct from its shareholders, officers, and directors \*\*\*." *Gallagher v. Reconco Builders, Inc.*, 91 Ill. App. 3d 999, 1004 (1980). This is true even with regard to corporations with single shareholders. *Id.* Courts are very reluctant to disregard the legal fiction of a distinct corporate existence. *In re Estate of Wallen*, 262 Ill. App. 3d 61, 68 (1994). In considering whether to pierce the corporate veil, courts

> "examine many factors, such as: inadequate capitalization; failure to issue stock; failure to observe corporate formalities; nonpayment of dividends; insolvency of the debtor corporation; nonfunctioning of the other officers or directors; absence of corporate records; commingling of funds; diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; failure to maintain

arm's length relationships among related entities; and whether, in fact, the corporation is only a mere facade for the operation of the dominant stockholders." *Id.* at 69.

"A party seeking to pierce the corporate veil has the burden of making 'a substantial showing that one corporation is really a dummy or sham for another' *** ." *Id.* at 68 (quoting *Pederson v. Paragon Pool Enterprises*, 214 Ill. App. 3d 815, 820 (1991)).

¶ 37    Although this case does not present a typical veil-piercing situation, the practical result is the same. The circuit court disregarded the distinct legal existence of the corporation to hold that Platt was both the obligor and obligee on the note. That is, the court treated Access merely as Platt's alter ego and regarded their respective assets and obligations as no longer insulated from each other. But the court reached that conclusion without addressing the extensive list of veil-piercing factors recited above. The record is devoid of any evidence regarding, for example, the capitalization of Access or the extent to which Platt observed corporate formalities.

¶ 38    In support of its decision to ignore the corporate form, the circuit court relied on *In re Estate of Ozier*, 225 Ill. App. 3d 33 (1992). In *Ozier*, the court said that equity may occasionally prevent a merger, "even when one party is both obligor and obligee on the note." *Id.* at 36-37. However, equity "will not prevent a merger when such prevention would result in carrying an unconscientious wrong into effect." *Id.* at 37. *Ozier* discusses the court's equitable power to prevent a merger "even when one party is both obligor and obligee on the note." *Id.* It does not stand for the proposition that equity can force a merger in a case where the obligor and obligee are distinct legal entities.

¶ 39    In affirming the circuit court's decision on this issue, the majority relies solely on a single citation to the century-and-a-third-old *Donk* case. *Supra* ¶ 26. *Donk* refers to "the qualities of debtor and creditor." *Donk*, 117 Ill. at 338. I take that expression to mean that there are two

distinct "qualities" at issue: (1) the quality of being debtor and (2) the quality of being creditor. This reading is supported by the subsequent reference to " both qualities." (Internal quotation marks omitted.) *Id.* Thus, an obligor has the "quality of debtor," and an obligee has the "quality of creditor."

¶ 40 However, the majority appears to misapply the language of *Donk*. The majority opinion puts special emphasis on the plural form of the word "qualities" and slightly, but critically, modifies *Donk*'s language by referring to "*the* qualities of the debtor and creditor." (Emphasis added.) *Supra* ¶ 26. The addition of the definite article "the" transforms "debtor" and "creditor" from *qualities* to *individuals*. The majority then appears to attribute to the debtor and the creditor some other (unnamed) qualities. The majority then identifies Platt as both creditor and debtor because he "undoubtedly" has the unenumerated qualities attributable to creditors and debtors. *Id.*

¶ 41 This distinction may seem petty, but it is not merely semantic. The majority specifically relies on *Donk* for the proposition that the "relevant inquiry" is whether Platt has the qualities of the creditor and the qualities of the debtor. *Id.* Under my reading of *Donk*, there is only one "quality of creditor" and one "quality of debtor," and those qualities are always attributable to the obligee and the obligor, respectively. In this case, the quality of creditor is in Access as holder of the Platt note, and the quality of debtor is in Platt as the obligor. The two qualities have not become united in the same individual, and the doctrine of merger is therefore inapplicable.

¶ 42 *Donk* does not deal with a situation where the creditor and debtor were separate legal entities. The case did not contemplate such a set of facts, and offers no support for the majority's conclusion. I would hold that the court erred in disregarding the corporate form to find that Platt

was both the obligor and obligee on the Platt note. Consequently, I would hold that the decisions of the circuit court must be reversed.

¶ 43    Because I would hold that the merger doctrine is inapplicable, I would not reach the issue of whether the circuit court erred in applying Platt's debt dollar-for-dollar to the judgment. I note however, that there is no support for the theory that the merger doctrine allows a money judgment to be satisfied by tendering an unliquidated—and perhaps uncollectible—debt rather than payment. In fact, it seems possible that this is one of the situations alluded to by *Ozier*, in which equity should prevent a merger, even if the debtor and creditor are the same individual. In the January 18, 2018, order, the circuit court wrote that it would be inequitable to permit Platt to hold the note as collateral, thus preventing Kane from collecting on it. But it is also possible that Kane will receive a windfall if Platt is ultimately successful in defending Kane's suit to enforce the remainder of the note. In that case, Kane will have satisfied the SGF judgment with a worthless note. It seems neither equitable nor wise to allow an unliquidated debt to satisfy a judgment by operation of the merger doctrine.

¶ 44    The majority opinion concludes that Access forfeited this issue by not raising it until its motion to reconsider. *Supra* ¶ 20 n.4. However, in its response to Kane's motion to dismiss, Access repeatedly argued that an unadjudicated debt cannot set off a money judgment. If Access forfeited the issue because it couched the arguments in terms of "set off" rather than the merger doctrine, we should overlook that forfeiture in the interest of settling the law on this novel and close question. See, *e.g.*, *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 438 (2008) (overlooking "forfeiture in the interest of maintaining a sound and uniform body of precedent").

¶ 45 There are many reasons for shareholders and their corporations to enter into debtor/creditor relationships. For one thing, corporations face significant tax implications when funded through shareholder loans rather than capital investments. See, *e.g.*, *Alterman Foods, Inc. v. United States*, 505 F.2d 873, 876 (5th Cir. 1974). Likewise, shareholders may prefer to borrow money from their companies rather than receive taxable distributions. See *id.* at 875 (analyzing whether "advances were in fact genuine loans" or taxable income). Although courts are somewhat suspicious of loans between corporations and their sole shareholders, such loans are not necessarily invalid. See *id.* If merger were applied to every debt between a sole shareholder and his closely held corporation, the doctrine would effectively collapse all such debtor/creditor relationships. Shareholder loans could never exist between a sole shareholder and his corporation because the merger doctrine would automatically extinguish them at the moment of inception. Because this result is incompatible with familiar principles of corporate law, I respectfully dissent.

---

**Nos. 1-18-0173, 1-18-1563 cons.**

---

| | |
|---|---|
| **Cite as:** | *Access Realty Group, Inc. v. Kane*, 2019 IL App (1st) 180173 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 10-L-0820, 17-L-5670; the Hon. Brigid Mary McGrath, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Daniel A. Hawkins, of Erwin Law, LLC, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Adam B. Rome, of Greiman, Rome & Griesmeyer, LLC, of Chicago, for appellee Bridgeview Bank Group. |
| | Robert A. Chapman and Patrick P. Manion, of Chapman Spingola, LLP, of Chicago, for appellees Patrick W. Kane, William Kane, and Victoria Goldblatt-Kane. |
| | Steven H. Leech, of Gozdecki, Del Giudice, Americus, Farkas & Brocato LLP, of Chicago, for other appellee. |

---