2026 IL App (1st) 241341
No. 1-24-1341
Opinion filed March 13, 2026

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| LEGACY RE, LTD., a British Virgin Islands Insurance Company, and ROCK SOLID GELT LIMITED, a Delaware Limited Partnership, in Their Own Names as Well as in the Name of Fortuna Stream LP, a California Limited Partnership, | ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs, | ) ) | |
| v. | ) ) | Nos. 14 CH 09664, 16 CH 12703 (cons.) |
| 401 PROPERTIES LIMITED PARTNERSHIP, an Illinois Limited Partnership; 401 PROPERTIES, INC, an Illinois Corporation; 330 SOUTH WELLS, LLC, an Illinois Limited Liability Company; EXCEL ACQUISTIONS, LLC, an Illinois Limited Liability Company; 401 LaSALLE LENDERS, LLC, an Illinois Limited Liability Company; BRIDGEVIEW BANK GROUP, as Trustee Under Trust Agreement Dated September 16, 2010, and Known as Trust Number 1-3432; THE CITY OF CHICAGO; THE CITY OF CHICAGO DEPARTMENT OF WATER MANAGEMENT; ABM JANITORIAL SERVICES-MIDWEST, LLC; and UNKNOWN OWNERS AND NONRECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | The Honorable Gerald Cleary, and Lynn Weaver-Boyle Judges, presiding. |
| Defendants | ) ) | |
| (Rock Solid Gelt Limited, Plaintiff-Appellee; 401 Properties Limited Partnership, 401 Properties, Inc., Excel Acquistions, LLC, and 330 South Wells, LLC, Defendants-Appellants). | ) ) ) ) ) ) | |

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs filed this mortgage foreclosure action more than 10 years ago. On May 11, 2022, after a bench trial, the trial court issued a trial order that, among other things, imposed a constructive trust in favor of plaintiff Rock Solid Gelt Limited (Rock Solid) over Rock Solid's share of a mortgage note. The trial order also transferred the case to another judge for the entry of "form orders of judgment of foreclosure" and for further proceedings including the sale of the subject property.

¶ 2    Defendant 330 South Wells, LLC (South Wells), was the successful bidder at the sale held on May 15, 2024. The order approving the sale, entered on June 17, 2024, provided that the overwhelming bulk of the sale proceeds were to be distributed to Rock Solid, who was due over $3.5 million from the sale. Defendant Excel Acquistions LLC (Excel) was to receive over $150,000 from the sale. In addition, a deficiency judgment was entered in favor of Rock Solid and against 401 Properties Limited Partnership (401 LP) for an additional amount of just under $2,000. On June 26, 2024, defendants South Wells, Excel, 401 LP, and 401 Properties, Inc. (401 Inc.)[1] filed a joint notice of appeal, appealing the June 17, 2024, order approving the sale, the March 21, 2024, judgment of foreclosure, and the May 11, 2022, trial order. For the following reasons, we affirm.

¶ 3                                     BACKGROUND

---

[1] 401 Inc. is the general partner of 401 LP.

¶ 4        On May 11, 2022, the trial court entered a detailed nine-page trial order that noted that the "matter was before the Court for [a] bench trial for the foreclosure of the property located at 401 S. La Salle St., Chicago." 401 LP was the beneficial owner of the subject property, although the legal title to the property was held by the Chicago Land Trust Company under a land trust.

¶ 5        At issue were two mortgages, which the trial court labeled as the "BBG" note and mortgage and the "Fortuna" note and mortgage. On March 10, 2009, 401 LP obtained a loan from the Bridgeview Bank Group (BBG) for approximately $7.9 million, secured by a mortgage on the subject property, which is the BBG note and mortgage.

¶ 6        On the same day, March 10, 2009, 401 LP also obtained a loan from Fortuna Stream LP (Fortuna), a California limited partnership, for approximately $3.2 million, which was also secured by a mortgage on the subject property, and which is the Fortuna note and mortgage. Also on March 10, 2009, 401 LP, BBG, and Fortuna entered into an agreement that the Fortuna note, and mortgage were subordinate to the BBG note and mortgage.

¶ 7        On September 22, 2009, Fortuna assigned interests in the Fortuna note to plaintiffs Legacy Re, Ltd. (Legacy Re), and Rock Solid. However, in September 2018, Legacy Re assigned all of its interest in the Fortuna note to Rock Solid. As a result, Rock Solid held a 28.4729% interest in the Fortuna note. In February 2015, South Wells acquired all of the interest in the Fortuna note, except for the interest currently held by Rock Solid. South Wells' interest was 71.527%.

¶ 8        On October 30, 2015, the BBG note and mortgage were acquired by Excel. However, the sole shareholder of Excel was South Wells.

¶ 9        In 2014, this foreclosure action was initiated by plaintiffs Rock Solid and Legacy Re. Back in 2014, Legacy Re still had an interest in the Fortuna note. In an order dated December 8, 2014, the trial court appointed Eric Janssen of Chicago Real Estate Resources, Inc. as receiver for the subject property. As receiver, Janssen was charged with the responsibility of "manag[ing] the property as would a reasonably prudent person." The order "authorized" Janssen "to collect all rents relating to the property" and to allocate "receipts from the operations of the real estate."

¶ 10       After holding a bench trial in connection with this foreclosure action, the trial court made a number of factual findings in its 2022 orders. First, the court made a credibility determination, finding that Leon Greenblatt testified "credibly and uncontrovertibly." In an effort to clarify the May 11, 2022, trial order, the court issued a short one paragraph order on December 12, 2023, stating that it was actually Greenblatt, rather than Greenblatt's wife, "who testified credibly and uncontrovertibly." Both the May and December 2022 orders found that Greenblatt's wife Leslie Jabine deferred to Greenblatt, as he had testified, on all decisions regarding 401 LP. Thus, although Jabine was a 49.99 % partner, the trial court found that Greenblatt was in control of her interest.

¶ 11       The trial court then found (1) that Greenblatt, Andrew Jahelka, and Richard Nichols "controlled 95% of" 401 LP, which was the beneficial owner of the subject property, and (2) that these same people owned or were "the controlling entities" of another entity, "which in turn owned and controlled" South Wells. As noted above, South Wells had acquired the majority interest in the Fortuna note and the sole interest in the BBG note.

¶ 12       The trial court further found that, since the same people were both creditor and debtor, the BBG note was extinguished as a result of the merger doctrine and that the Fortuna note

4

was extinguished up to the amount that South Wells controlled it. The trial court explained: "If those debts were not cancelled and the property was foreclosed and sold at auction, then Greenblatt, Jahelka and Nichols would obtain a double recovery ***. Such a result would be patently unfair, unjust and unwarranted."

¶ 13        The trial court found "that Rock Solid [was] entitled to a constructive trust" over its share of the Fortuna note. The trial court appointed "Mitchell Lieberman, who is currently the attorney for the court appointed receiver over the subject property, as the trustee of the constructive trust for the benefit of Rock Solid." The order stated that "[t]he matter is hereby transferred back to Judge Flannery in [room number] for transfer to Calendar 63 of the Chancery Division for the entry of the form orders of judgment of foreclosure and sale of the subject property."

¶ 14        On June 9, 2022, South Wells filed a notice of interlocutory appeal, arguing that this court had interlocutory jurisdiction pursuant to Illinois Supreme Court Rule 307 (eff. Nov. 1, 2017). After the matter was fully briefed, we dismissed the appeal, finding that we lacked interlocutory jurisdiction and that there was "no reason or justification for either more delay or piecemeal litigation in this decade-old foreclosure action." *Legacy Re, Ltd. v. 401 Properties Ltd. Partnership*, 2023 IL App (1st) 220855, ¶ 26.

¶ 15        On remand, the trial court denied, on December 12, 2023, Excel's and South Wells' motion to reconsider its May 11, 2022, trial order. On March 21, 2024, the trial court issued a "Judgment of Foreclosure and Sale." This order observed that, pursuant to the May 11, 2022, trial order, Rock Solid had a valid and existing lien upon the property and that the amount of Rock Solid's part of the unpaid and original principal balance was just under $1 million. However, with the accrued interest, the total amount due Rock Solid, without attorney fees,

was now over $3 million, as of March 21, 2024. The order noted that the attorney fees and costs due to Rock Solid would be determined by separate order, prior to the sale.

¶ 16    The March 21, 2024, order further observed that, pursuant to earlier orders, Excel had a first priority lien on the sale proceeds, in the principal amount of $98,500, plus interest, which totaled close to $150,000, as of March 21, 2024. The order noted that, pursuant to the prior trial order, the mortgage lien previously asserted by Excel and South Wells had been extinguished.

¶ 17    As noted above, South Wells was the successful bidder at the sale held on May 15, 2024, and an order approving the sale was entered on June 17, 2024. On June 26, 2024, South Wells, Excel, 401 LP, and 401 Inc. filed a timely notice of appeal, and this appeal followed.

¶ 18                                         ANALYSIS

¶ 19                              I. 401 Inc.'s Standing Issue

¶ 20    On appeal, appellants contest primarily the trial court's application of the merger doctrine to extinguish interests held by South Wells and Excel. However, as a preliminary matter, 401 LP and 401 Inc. argue that Rock Solid is precluded from filing and maintaining a lawsuit to foreclose, because Rock Solid allegedly failed to register to do business in Illinois. While 401 LP and 401 Inc. join in the other appellants' arguments, this is the only issue that they raise in their appellate briefs. Rock Solid argues that this issue is waived.

¶ 21    401 Inc. alleges that it filed a pretrial motion to dismiss on this ground. In support, 401 Inc. cites a motion that it filed on June 13, 2017, to dismiss plaintiffs' second amended complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2016)). Section 2-619(a) permits a summary disposition, based upon proof of an affirmative matter that avoids the legal effect of a claim. *Sturgill v. Santander Consumer*

*USA, Inc.*, 2016 IL App (5th) 140380, ¶ 21 (section 2-619(a)(9) permits the summary disposition of legal issues or easily proved issues of material fact). 401 Inc.'s motion alleged that Rock Solid lacked capacity to sue because it had been transacting business in Illinois for at least a decade, without authorization from the state. In particular, the motion alleged that Rock Solid owned another building in Illinois and had maintained a federal lawsuit in Chicago. 401 Inc. alleges that the trial court denied its motion and cites in support a short handwritten order, dated August 21, 2017. With respect to 401 Inc., the order states only: "401 Property'[s] Motion to dismiss is denied." No reasons or explanation are given. However, elsewhere in the order, plaintiffs were given leave to replead.

¶ 22        Rock Solid alleges that its fifth amended complaint, filed March 29, 2019, was its "operative complaint." In this complaint, Rock Solid alleged that it was a Delaware limited partnership and that it did not transact business in Illinois, which required registration. However, the second amended complaint, filed on June 2, 2017, which 401 Inc. had moved against, also stated that Rock Solid was a Delaware limited partnership and that Rock Solid did not transact business in Illinois requiring registration.

¶ 23        On appeal, 401 Inc. acknowledges the principle that interlocutory orders, such as the trial court's 2017 denial, are not reviewable following an evidentiary trial because they merge with the judgment. 401 Inc. argues that the fact finder here did not assess this issue as part of the evidentiary trial and that the evidence in the record does not factually support Rock Solid's claim that it was not doing business requiring registration.

¶ 24        "As a general rule, when a motion for summary judgment is denied and the case proceeds to trial, the denial of summary judgment is not reviewable on appeal because the result of any error is merged into the judgment entered at trial." *Belleville Toyota, Inc. v. Toyota*

*Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 355 (2002). "The rationale for this rule is that review of the denial order would be unjust to the prevailing party, who obtained a judgment after a more complete presentation of the evidence." *Belleville Toyota*, 199 Ill. 2d at 356. There is an exception to this rule, if the prior motion presented a legal issue rather than a factual one. *Belleville Toyota, Inc.*, 199 Ill. 2d at 356. However, if the claim in the motion involved a factual issue, then the denial of the motion "merged into the trial result and is not reviewable on appeal." *Belleville Toyota, Inc.*, 199 Ill. 2d at 356. While the motion at issue here was a motion to dismiss rather than one for summary judgment, 401 Inc. acknowledges that its motion involved factual issues and sought a summary disposition. Thus, the denial merged into the trial result and is not reviewable separately on appeal.

¶ 25        Further, 401 Inc. raised the standing issue in a posttrial brief, and Rock Solid moved for leave to file a rebuttal brief. On April 19, 2022, the trial court found that Rock Solid's motion for further briefing was moot, "[b]ased on the views expressed by the Court with respect to 401 Properties Inc.'s argument that Rock Solid has not qualified or obtained an authorization to do business in Illinois." To the extent that 401 Inc. sought review of "the views expressed by the Court" on this issue, 401 Inc. needed to provide them. However, we have no transcript for this date in the record before us. *Doe v. Township High School District 211*, 2015 IL App (1st) 140857, ¶ 80 ("It is the appellant's burden to provide this court with a sufficient record to grant the relief he or she requests on the claims that he or she raises."). For all these reasons, we find this issue both waived and not reviewable.

¶ 26                                    II. Merger

¶ 27        Next, we review the trial court's application of the merger doctrine. The merger doctrine provides that, when the person who is bound to pay is the same person who is entitled

to receive, there is an extinguishment of rights, such that debtor and creditor become the same person, and there can be no right to put in execution. *Access Realty Group, Inc. v. Kane*, 2019 IL App (1st) 180173, ¶ 22; *Olney Trust Bank v. Pitts*, 200 Ill. App. 3d 917, 925 (1990); *RM 1534 S. Western, LLC v. Music Zone Rehearsal Studios, LLC*, 2024 IL App (1st) 221694-U, ¶ 70. "[T]rial courts have the inherent equitable power to determine whether a judgment has been satisfied." *Access Realty*, 2019 IL App (1st) 180173, ¶ 29.

¶ 28      When reviewing a trial court's application of the merger doctrine, we will not disturb the trial court's judgment absent an abuse of discretion. *Access Realty*, 2019 IL App (1st) 180173, ¶¶ 21-22. An abuse of discretion occurs when the trial court's decision was arbitrary, fanciful, unreasonable, or where no reasonable person would adopt the view taken by the trial court. *Access Realty*, 2019 IL App (1st) 180173, ¶ 21. The imposition of a constructive trust, which was imposed in this case, is also generally a matter for the trial court's discretion and, as such, will be reversed only for an abuse of that discretion. *National Union Fire Insurance Co. of Pittsburgh v. DiMucci*, 2015 IL App (1st) 122725, ¶ 78. Similarly, the standard of review pertaining to the trial court's order confirming a mortgage foreclosure sale is also an abuse of discretion. *T2 Expressway, LLC v. Tollway, L.L.C.*, 2021 IL App (1st) 192616, ¶ 24.

¶ 29      Under the merger doctrine, although there may be entities legally separate from the persons involved in those entities, a court may disregard the legal forms when the debtor and creditor have become united. *Access Realty*, 2019 IL App (1st) 180173, ¶¶ 24, 26; *American Garden Homes, Inc. v. Gelbart Fur Dressing*, 238 Ill. App. 3d 64, 68, 69 (1992). Although it is not necessary to pierce the corporate veil or engage in a veil-piercing analysis, some of the same principles and tenets of the veil-piercing doctrine may apply in a merger analysis. *Access Realty*, 2019 IL App (1st) 180173, ¶ 24. One of these important tenets is the importance of not

"exalting form over substance." *Access Realty*, 2019 IL App (1st) 180173, ¶ 25 (one factor is whether the corporation is "a mere facade for the operation of the dominant stockholders"); *CCP Ltd. Partnership v. First Source Financial, Inc.*, 368 Ill. App. 3d 376, 481 (2006) (in the exercise of its equitable powers, a trial court will look through the forms to the substance of a transaction to determine the relationship of the parties).

¶ 30     While the merger doctrine is fact specific, the key inquiry is whether the qualities of debtor and creditor have become united in the same individuals. *Access Realty*, 2019 IL App (1st) 180173, ¶¶ 26-27; see *American Garden Homes*, 238 Ill. App. 3d at 68 (" 'the identity between the beneficial owners of a land trust and those who paid off the note' " resulted in a merger of ownership and debt). An important clue is whether the same persons, by utilizing different entities, manage to be on both sides of the same obligation. *Access Realty*, 2019 IL App (1st) 180173, ¶ 26; see *American Garden Homes*, 238 Ill. App. 3d at 68-69. If the person who controls the creditor's decision of whether to sue or foreclose is the same person being sued or foreclosed against, that is "nonsensical." *Access Realty*, 2019 IL App (1st) 180173, ¶ 25.

¶ 31     The appellants' arguments come down to that one line in The Wizard of Oz (MGM 1939) when the wizard begs: "Pay no attention to that man behind the curtain." Three men— (1) Greenblatt, (2) Jahelka, and (3) Nichols—went through a lot of trouble to make this seem a lot more complicated than it really is. But when you diagram the facts, the three men behind the curtain are really clear. In the charts and text below, when referring to these three men, we will indicate their control or ownership by using the numbers (1), (2) and (3).

¶ 32     First, we look at the debtor. The trial court found, with respect to the debtor, that (1) Greenblatt, (2) Jahelka, and (3) Nichols were the actual parties in interest. 401 LP was the

name of the entity that obtained both loans, and the trial court found that these three men controlled or owned 95% of 401 LP, as follows: 49.99% owned by (1) Greenblatt's wife, Jabine; 27% owned by (2) Jahelka; 18% owned by (3) Nichols (through ROLJ LLP, which Nichols managed and controlled for the benefit of his family); 5% owned by LR Office Properties LP; and 0.01% owned by 401 Inc. (whose sole share holder was (1) Greenblatt).



As noted above, the trial court, as the finder of fact, found that the testimony was credible and uncontroverted that Jabine, Greenblatt's wife, deferred to him on all decisions regarding 401 LP. In addition, 401 Inc. was the general partner of 401 LP, and 401 Inc.'s officers and directors were (1) Greenblatt, (2) Jahelka, and (3) Nichols.[2] However, there was no evidence that LR

---

[2] We have assigned the number (1) to Greenblatt as he owns the largest percentage, (2) to Jahelka who owns the second largest percentage, and (3) to Nichols because he owns the third largest percentage. We will utilize these assigned numbers throughout the opinion for illustrative purposes.

Office Properties LP was owned or controlled by them. Thus, as shown above, the debtor, 401 LP, was 95% owned or controlled by the three men.

¶ 33    Second, we look at the debt. The debt took the form of two loans, secured by mortgages on the same property. 401 LP was the beneficial owner of the property, and 401 LP obtained two loans on the same day that were secured by the same piece of real estate. On March 10, 2009, 401 LP obtained a loan from Bridgeview Bank for approximately $7.9 million secured by a mortgage on the property (the BBG note and mortgage). On March 10, 2009, 401 LP also obtained a loan from Fortuna for approximately $3.2 million which was also secured by a mortgage on the same property (Fortuna note and mortgage). Also, on the same day, March 10, 401 LP, BBG, and Fortuna all entered into an intercreditor agreement that the Fortuna note and mortgage were subordinate to the BBG note and mortgage.

¶ 34    Third, we look at the creditors, turning first to the Fortuna note. Interests in the Fortuna note were assigned and purchased several times. However, by the end of 2018, South Wells had acquired the right to foreclose on the Fortuna note, and the interests in the Fortuna note were held as follows: 28.4729% by Rock Solid and 71.5271% by South Wells. South Wells was managed by (1) Greenblatt, (2) Jahelka, and (3) Nichols and its sole member was "Scattered, Inc." Before discussing who is behind "Scattered, Inc," we explain how the interests came to be assigned as noted above. On September 22, 2009, Fortuna assigned a 6.206% interest to Legacy Re, and a 48.276% interest to Rock Solid. On June 8, 2011, an agreement was entered by which Legacy Re's interest was 9.7537% and Rock Solid's interest was 18.7192 %. However, in September 2018, Rock Solid acquired Legacy Re's interest, and Rock Solid's interest became 28.4729%, as reflected above.

¶ 35        As for the South Wells' interest reflected above, South Wells acquired in February 2015 all the interest in the Fortuna note not then held by Rock Solid or Legacy Re. That was also when South Wells was assigned the note and acquired the right to foreclose on it.

¶ 36        As noted above, Scattered, Inc., was the sole member of South Wells, a limited liability company, which, in turn, held the majority interest in the Fortuna note. The shareholders of Scattered, Inc. were (2) Jahelka; a trust with (3) Nichols as trustee and (1) Greenblatt's family as beneficiaries; and ROLJFP, Inc., which had (1) Greenblat, (2) Jahelka, and (3) Nichols as officers and directors, and ROLJ LLC as a sole shareholder (which is the successor and same entity as ROLJ LLP, which was managed and controlled by (3) Nichols for the benefit of his family). As noted above, the three shareholders of Scattered, Inc., included a trust called Investment Trust No. 92-7138, for which (3) Nichols was the trustee and the beneficiaries were (1) Greenblatt's family. With ROLJ LLP, (3) Nichols also managed and controlled it, as with the trust, but this time the beneficiaries were his own family. The remaining shareholder was (2) Jahelka. Thus, the same three men owned or controlled Scattered Inc. which was, in turn, the sole shareholder in South Wells—for which they were also the officers and directors.

¶ 37        As creditor, South Wells held the majority interest in the Fortuna note and the right to foreclose on it. Since these three men controlled 95% of the debtor (401 LP) (*supra* ¶ 32), as well as the majority interest in and the right to foreclose on the Fortuna note, debtor and creditor had become the same persons for the portion of the note purchased by South Wells, and there was no right to execute. *Access Realty*, 2019 IL App (1st) 180173, ¶ 22; *Olney Trust Bank*, 200 Ill. App. 3d at 925; *RM 1534 S. Western, LLC*, 2024 IL App (1st) 221694-U, ¶ 70.

¶ 38        Next, we turn to the BBG note, whose circumstances are simpler. The BBG note was acquired in October 2015 by Excel, a limited liability company formed in March 2015 for the

sole purpose of acquiring the BBG note. Excel's sole member was South Wells, which, as we already discussed above (*supra* ¶ 37), was controlled or owned by (1) Greenblatt, (2) Jahelka, and (3) Nichols. Since the three men controlled 95% of the debtor (401 LP) (*supra* ¶ 32), as well as the BBG note, debtor and creditor had become the same persons, and there was no right to execute. *Access Realty*, 2019 IL App (1st) 180173, ¶ 22; *Olney Trust Bank*, 200 Ill. App. 3d at 925; *RM 1534 S. Western, LLC*, 2024 IL App (1st) 221694-U, ¶ 70. Simply put, they had the obligation to repay 401 LP's debt, as represented by the note, *and* they were also entitled to receive payment as creditor, since they were the holders of the same note. As a result, their holdings (through Excel) extinguished the debt that was the BBG note.

¶ 39    Based on the above facts and exercising its equitable powers, the trial court found that it was fair and equitable to extinguish the debt from Excel's purchase of the BBG note, and the debt from South Wells' partial purchase of the Fortuna note. Having examined the above facts, we can find no flaw in the trial court's logic, and certainly no abuse of discretion, and thus must affirm. Otherwise, the three men would receive a double recovery: (a) debt cancelled *and* (b) credit paid.

¶ 40    We do not find defendants' arguments persuasive. Defendant South Wells and Excel argue, first, that they were surprised by the trial court's application of the merger doctrine, where Rock Solid did not plead the doctrine in its complaint. South Wells argues that the "Trial Order must be reversed for this reason alone" and cites in support a 1933 appellate court decision. As Rock Solid observes, "decisions of the Illinois Appellate Court prior to 1935 are not binding or precedential." *Parker v. Murdock*, 2011 IL App (1st) 101645, ¶ 23.[3] Further,

---

[3] Excel argues that "[i]t is fundamental that a judgment order must be supported by allegations in the complaint as well as by evidence." *Abbate Bros., Inc. v. City of Chicago*, 11 Ill. 2d 337, 346 (1957) .

we can find no undue surprise. The very first paragraph of Rock Solid's fifth amended complaint alleged that the "ultimate principals and/or controlling persons behind" the borrower, 401 LP, were (1) Greenblatt, (2) Jahelka, and (3) Nichols, whom the complaint referred to collectively as "the Greenblatt Cabal." This same first paragraph alleged that "the Greenblatt Cabal" owned and/or controlled not only the borrower, 401 LP, but also Excel and South Wells. As South Wells acknowledges, Illinois is a fact-pleading jurisdiction. *Fischetti v. Village of Schaumburg*, 2012 IL App (1st) 111008, ¶ 15 ("as a fact-pleading jurisdiction, Illinois does not permit plaintiffs to make vague allegations"). The facts alleged in this very first paragraph were neither vaguely phrased nor easy to miss. The allegations in this "introductory" paragraph were followed up by allegations regarding who in the "cabal" owned what. The complaint argued that, "[b]ecause of the unity of interest" among 401 LP, South Wells and Excel, "the several transactions should be collapsed." Based on the allegations in Rock Solid's complaint, we cannot find undue surprise.[4]

¶ 41    Second, South Wells and Excel argue that the merger doctrine can be applied only to one entity or person and, here, there were three, namely (1) Greenblatt, (2) Jahelka, and (3) Nichols, who Rock Solid refers to collectively as "the Greenblatt Cabal." At the trial, Jahelka was asked which "person" or "individual" negotiated with South Wells on behalf of 401 Inc., but Jahelka could not distinguish among the three of them and could reply only: "It

---

In that case, the law had changed in the interim, and the appellees put forth an argument based on the new law, where the supporting factual allegations were entirely missing from the complaint. By contrast, in the case at bar, the complaint sets forth the supporting factual allegations.

[4] Excel argues that one cannot plead one cause of action and recover on another and cites in support *In re Estate of Bontkowski*, 337 Ill. App. 3d 72, 77 (2003). In the *Bontkowski* case, this court found that there was no fiduciary relationship, as had been alleged in the complaint, but that this did not stop the trial court from imposing an equitable remedy based on other facts pled in the complaint. *Bontkowski*, 337 Ill. App. 3d at 78-79. The *Bontkowski* case supports the trial court's use of its equitable powers, such as the merger doctrine and constructive trust, whether or not a fiduciary relationship existed. *Infra* ¶¶ 52-53.

would've been either Greenblatt, Nichols or me." See *Access Realty*, 2019 IL App (1st) 180173, ¶ 25 (one factor is whether the corporation is "a mere facade for the operation of the dominant stockholders"). Similarly, when asked who negotiated on behalf of South Wells, Jahelka replied: "I don't know who was wearing what hat at the time." A few minutes later, the court sought to clarify and queried: "Who was it that you were talking about, about wearing hats?" Jahelka replied: "Me, Greenblatt and Nichols." The merger doctrine is fact specific, and given the testimony in this case, we can find no abuse of discretion by the trial court as treating these three men as one group, as they so treated themselves. *Access Realty*, 2019 IL App 180173, ¶ 27 ("the merger doctrine is fact specific"); *American Garden Homes*, 238 Ill. App. 3d at 68 (where the same group of men were both the beneficial owners of a land trust, as well as " 'those who paid off the note,' " merger occurred).

¶ 42          Third, South Wells and Excel argue that the trial court disregarded the "legal separateness" of nine entities. However, they acknowledge that a court may, in its discretion, disregard, for example, the legal separateness of a corporation when applying the merger doctrine. *Access Realty*, 2019 IL app 180173, ¶ 24. This discretionary authority does not diminish when the fact pattern is more complex. Excel argues that the trial court did not apply a full veil-piercing analysis. While some of the same principles and tenets of the veil-piercing doctrine may apply in a merger analysis, it is not necessary in a merger analysis to pierce the corporate veil or to engage in a veil-piercing analysis. *Access Realty*, 2019 IL App (1st) 180173, ¶ 24.

¶ 43          Fourth, South Wells and Excel argue that we should look at the parties' interests as they existed in 2015, when South Wells and Excel first acquired the notes, rather than at the

16

ultimate owners. We see no reason to turn the clock back to a different time, if the landscape has changed.

¶ 44    Fifth, Excel argues that the intent of the party, whose estates are being merged, should govern. In support, Excel relies principally on quotes from, and cites to, the 1906 case of *Moffet v. Farwell*, 222 Ill. 543, 548 (1906). However, *Moffet* also provided that "a court of equity will keep alive both estates *if it appears necessary* to the ends of justice to do so." (Emphasis added.) *Moffet*, 222 Ill. at 548. In response to Excel's reliance on *Moffet*, Rock Solid cites the contemporaneous 1903 case of *Forthman v. Deters*, 206 Ill. 159, 171 (1903), which stressed that equity would act to prevent a merger "only" for the purpose of promoting substantial justice. *Jurado v. Sims*, 166 Ill. App. 3d 380, 382 (1988) (Illinois courts will "sometimes" prevent a merger, even when one party is both obligor and obligee of a note, but only for the purpose of promoting substantial justice); *Miller v. Whelan*, 158 Ill. 544, 555 (1895) (the rule that intention is controlling "will not have application" if used to accomplish a "wrong to others under the color of legal forms"). Thus, substantial justice has always been the guiding light, as opposed to the intent of the subject. In addition, in more recent times, the intent of the subject of the merger has played less of a role. *Access Realty*, 2019 IL App (1st) 180173, ¶¶ 20, 24-26 (the court extinguished a debt held by an entity that never intended for that to happen); *Jurado*, 166 Ill. App. 3d at 382 (the merger doctrine was applied to cancel a mortgage note, with no mention of intent or intention). But see *In re Estate of Ozier*, 225 Ill. App. 3d 33, 37 (1992) (the court tried to tease out the intent of a now dead husband and wife to determine the interests of their respective heirs).

¶ 45    Sixth, South Wells and Excel claim that the Uniform Limited Partnership Act (2001) (Act) (815 ILCS 215/101 *et seq*. (West 2024)) prohibits a trial court from applying the merger

doctrine. In support, South Wells and Excel cite section 112 of the Act, which provides that "[a]" partner may lend money to "the" limited partnership, with "the same rights and obligations *** as a person who is not a partner." 805 ILCS 215/112 (West 2024). The Act also provides that principles of equity supplement the Act, unless displaced by a "particular" provision. 805 ILCS 215/107 (West 2024). *Cf. Wells v. Reed*, 2024 IL App (1st) 230502, ¶ 27 (a "requirement that allegations must be made with particularity heightens the pleading requirement beyond that which would normally be required"). The line quoted by South Wells and Excel does not bar a court of equity, in its discretion, from providing equitable relief, when warranted. The case at bar does not concern a partner and a limited partnership, as contemplated by the quoted line, but rather involves multiple layers of obfuscation or "confusion" as the trial court noted in its order, by a group of three men who appear at every level. In any event, even if the quoted line could be interpreted as an attempt to strip the courts of their equitable powers, it is well established that a court's "inherent equitable power, derived from the historic power of equity courts, cannot be taken away or abridged by the legislature." *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 298 (2000). "When the legislature encroaches upon a fundamentally judicial prerogative, this court has not hesitated to protect judicial authority." *Smithberg*, 192 Ill. 2d at 298.

¶ 46     For all the above reasons, we do not find appellants' arguments persuasive, and we cannot find that the trial court abused its discretion by applying the equitable doctrine of merger.

¶ 47                                    III. Constructive Trust

¶ 48     In light of the extinguished debt (*supra* ¶ 39), the only remaining debt subject to foreclosure was the portion of the Fortuna note owned by Rock Solid. As a result, the trial

18

court imposed a constructive trust over the 28.4729% portion of the Fortuna note owned by Rock Solid. South Wells, who held the remaining majority interest in the Fortuna Note, challenges the court's imposition of a constructive trust.

¶ 49        Like the merger doctrine, a constructive trust is an equitable remedy. Our supreme court has defined "equity" as " '[j]ustice administered according to fairness as contrasted with the strictly formulated rules of common law.' " *Smithberg*, 192 Ill. 2d at 297 (quoting Black's Law Dictionary 540 (6th ed. 1990)). Our highest court has advised its lower courts that this principle should serve as "a beacon" to any court attempting to chart a course through conflicting case law. *Smithberg*, 192 Ill. 2d at 297.

¶ 50        A constructive trust is a restitutionary remedy imposed to avoid unjust enrichment. It is imposed when a person has obtained money or property to which he is not entitled and that, in equity and good conscience, he should not keep. *Smithberg*, 192 Ill. 2d at 299; *National Union Fire*, 2015 IL App (1st) 122725, ¶ 75 (a constructive trust is a remedy, not a cause of action). Although wrongdoing is often involved, it is not a necessary element. *Smithberg*, 192 Ill. 2d at 299. "In order to impose a constructive truest, it is sufficient that a party has received money properly belonging to another under circumstances that, in equity, the party ought not be allowed to retain." *Jackson v. Callan Publishing, Inc.*, 356 Ill. App. 3d 326, 334 (2005) (citing *Suttles v. Vogel*, 126 Ill. 2d 186, 193 (1988)).

¶ 51        Constructive trusts are generally divided into two groups: one group, where actual fraud exists, and the other, where there exists a confidential or fiduciary relationship. *Suttles*, 126 Ill. 2d at 193. In the case at bar, the trial court found that a fiduciary relationship existed based on the dominance and superiority of South Wells over Rock Solid's minority interest in the Fortuna note. See *Tummelson v. White*, 2015 IL App (4th) 150151, ¶ 22 (significant

19

dominance and superiority are key to establishing a fiduciary relationship). On appeal, South Wells argues there was no fiduciary duty.

¶ 52    However, neither a fiduciary relationship nor wrongdoing is essential to the imposition of a constructive trust. *Tummelson*, 2015 IL App (4th) 150151, ¶ 26. As a court of review, we may affirm a judgment for any reason that the record supports, regardless of the trial court's rationale. *Tummelson*, 2015 IL App (4th) 150151, ¶ 26. Ultimately, it is the trial court's judgment that we review, not its rationale. *Tummelson*, 2015 IL App (4th) 150151, ¶ 26. As a result, we may affirm the judgment on any ground appearing in the record, regardless of the trial court's given reason. *Tummelson*, 2015 IL App (4th) 150151, ¶ 26.

¶ 53    In *Tummelson*, for example, a boyfriend sought a constructive trust on the amount that he had contributed toward the purchase of a house, which now, due to a break-up, he was no longer allowed to cohabit. *Tummelson*, 2015 IL App (4th) 150151, ¶ 39. Although finding neither wrongdoing nor a fiduciary relationship, the appellate court also found no abuse of discretion by the trial court in imposing a constructive trust, in the amount of his down payment, from the sale proceeds. *Tummelson*, 2015 IL App (4th) 150151, ¶¶ 23, 25, 39.

¶ 54    The *Tummelson* court noted, as we did above, that a constructive trust is a remedy for unjust enrichment. *Tummelson*, 2015 IL App (4th) 150151, ¶ 27 (citing *Kurtz v. Solomon*, 275 Ill. App. 3d 643, 651 (1995)). "Usually, unjust enrichment results from wrongdoing, such as actual fraud or the breach of a fiduciary duty ***." *Tummelson*, 2015 IL App (4th) 150151, ¶ 27 (citing *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 114 Ill. 2d 278, 293 (1986)). "[B]ut it is possible to be unjustly enriched without having done anything wrong." *Tummelson*, 2015 IL App (4th) 150151, ¶ 27 (citing *Smithberg*, 192 Ill. 2d at 299).

"A constructive trust rectifies unjust enrichment, not just wrongdoing." *Tummelson*, 2015 IL App (4th) 150151, ¶ 26.

¶ 55 Similarly, in the case at bar, the trial court imposed a constructive trust on Rock Solid's portion of the sale proceeds to which South Wells was not entitled. The trial court found that Rock Solid had presented clear and convincing evidence that South Wells, although the holder of the Fortuna Note, did little to enforce its rights under the note. Although 401 LP never made a payment on the Fortuna Note and was in default since 2010, South Wells did not file an action to foreclose until it was forced to do so in 2018 based on the trial court's rulings. The trial court found that South Wells was consistently adverse to Rock Solid's attempt to foreclose on the Fortuna note, even during the trial on this matter. The trial court found that "the reason is because the debtor, 401 LP, and the creditors, [South Wells] and Excel, are one and the same: [1] Greenblatt, [2] Jahelka and [3] Nichols." Based on the unique facts of this case, we can find no abuse of discretion in the imposition of a constructive trust, without which, the three men would be unjustly enriched based on South Wells' conflict of interest.

¶ 56                                          CONCLUSION

¶ 57 Finding no abuse of discretion, we affirm the trial court's application of the merger doctrine and a constructive trust to the instant facts and affirm.

¶ 58 Affirmed.

*Legacy Re, Ltd. v. 401 Properties Ltd. Partnership*, 2026 IL App (1st) 241341

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 14-CH-09664, 16-CH-12703; the Hon. Gerald Cleary and the Hon. Lynn Weaver-Boyle, Judges, presiding. |
| **Attorneys for Appellant:** | Louis D. Bernstein and James D. Trail, of Ginsberg Jacobs, LLC, of Chicago, for appellants 401 Properties Limited Partnership and 401 Properties, Inc.<br><br>Gregory J. Jordan and Mark R. Zito, of Jordan & Zito LLC, and C. Philip Curley, Alan R. Dolinko, and Robert L. Margolis, of Robinson Curley P.C., both of Chicago, for other appellants. |
| **Attorneys for Appellee:** | Lawrence M. Benjamin, of Crowell & Moring LLP, of Chicago, for appellee. |